VOLUME I

COURT OF CRIMINAL APPEALS NO. 01-1540

# APPEAL TO ALABAMA COURT OF CRIMINAL APPEALS

FROM

## CIRCUIT COURT OF LEE COUNTY, ALABAMA

CIRCUIT COURT NO. CC 01 1001-1003

CIRCUIT JUDGE HON. ROBERT HARPER

Type of Conviction / Order Appealed From: SODOMY I (2 COUNTS) & RAPE I

Sentence Imposed: 16 YEARS

Defendant Indigent: ☒ YES ☐ NO

WILLIAM LEE KIRBY

LARRY COOPER              (334) 502-0022

**NAME OF APPELLANT**

(Appellant's Attorney)
P. O. BOX 1868                    (Telephone No.)

(Address)
AUBURN, AL  36831

(City)            (State)            (Zip Code)

V.

## STATE OF ALABAMA

(State represented by Attorney General)

**NAME OF APPELLEE**

NOTE: If municipal appeal, indicate above, and enter
name and address of municipal attorney below.

(For Court of Criminal Appeals Use Only)





EXHIBIT
A

INDEX

CASE ACTION SUMMARY(CC 01 1001)…....................................................002

INDICTMENT .....................................................................................005

APPEAL BOND ..................................................................................006

ORDER ............................................................................................007

MOTION TO SET AN APPEAL BOND FOR DEFENDANT ...................................008

MOTION FOR EXTENSION OF TIME TO COMPLETE TRANSCRIPT .....................010

REPORTER'S TRANSCRIPT ORDER .........................................................011

APPEAL APPOINTMENT ......................................................................012

ORDER SETTING CASE FOR HABITUAL OFFENDER HEARING ...........................013

JURY VERDICT .................................................................................015

REQUEST FOR PRODUCTION & MOTION FOR DISCOVERY .............................016

MOTION TO CONSOLIDATE ..................................................................021

STATE'S MOTION FOR HEARING ON ADMISSIBILITY ...................................023

DISCOVERY ORDER ...........................................................................069

CASE ACTION SUMMARY (CC 01 1001)......................................................070

INDICTMENT (CC 01 1002) ...................................................................073

MOTION FOR EXTENSION TO COMPLETE TRANSCRIPT .................................074

APPEAL APPOINTMENT ......................................................................075

JURY VERDICT .................................................................................076

DISCOVERY ORDER ...........................................................................077

CASE ACTION SUMMARY (CC 01 1003)......................................................078

INDICTMENT (CC 01 1003) ...................................................................081

MOTION FOR EXTENSION TO COMPLETE TRANSCRIPT .................................082

APPEAL APPOINTMENT ......................................................................083

DISCOVERY ORDER ...........................................................................084

DEFENDANT'S MOTION FOR DISCOVERY .................................................085

CERTIFICATE OF COMPLETION..............................................................087

## INDEX TO EXHIBITS

DEFENDANT'S EXHIBIT NO. 1 ...................................................088

STATE'S EXHIBIT NO. 1 ...........................................................097

STATE'S EXHIBIT NO. 2 ..........................................................100

STATE'S EXHIBIT NO. 3 ...........................................................101

STATE'S EXHIBIT NO. 4 ...........................................................106

STATE'S EXHIBIT NO. 5 ...........................................................108

STATE'S EXHIBIT NO. 6 ...........................................................111

```
ACC872           ALABAMA JUDICIAL INFORMATION SYSTEM    CASE: CC 2001 001001.00
OF   LEW                  CASE ACTION SUMMARY
PA   1                    CIRCUIT  CRIMINAL                  RUN DATE: 10/10/2001
=============================================================================
IN THE CIRCUIT COURT OF    LEE                                   JUDGE: RMH
```

STATE OF ALABAMA                 VS        KIRBY WILLIAM LEE
                                           98 JEANETTE
CASE: CC 2001 001001.00
                                           OPELIKA, AL  36801 0000

DOB: 06/24/1976       SEX: M   RACE: W  HT: 5 05  WT: 201   HR: BRO EYES: BRO
SSN: 257063906  ALIAS NAMES:
=============================================================================
CHARGE01: SODOMY 1ST DEGREE     CODE01: SOO1 LIT: SODOMY 1ST DEG TYP: F #: 001
OFFENSE DATE:                              AGENCY/OFFICER: 0430000 HEALEY/

DATE WAR/CAP ISS:                       DATE ARRESTED: 08/01/2001
DATE   INDICTED: 10/05/2001             DATE   FILED: 10/10/2001
DATE   RELEASED:                        DATE   HEARING:
BOND     AMOUNT:      $10,000.00 S      SURETIES: AAA BONDING COMPANY
DATE 1: 10/18/2001  DESC: ARRG          TIME: 0900 A
DATE 2: 11/13/2001  DESC: JTRL          TIME: 0830 A

TRACKING NOS: GJ 2001 000651 00  /                        /

   DEF/ATY: HAUSER JERRY WAYNE          TYPE: A                      TYPE:
            POST OFFICE BOX 155
            168 EAST MAGNOLIA AVENUE    *Ken Funderburk "R"*
            AUBURN        AL 36831                        00000

PROSECUTOR: ABBETT NICK

=============================================================================
CAUSE: GJ200010006510O CHK/TICKET NO:                   GRAND JURY: 60
COURT REPORTER: _____ SID NO:      000000000
DEF STATUS: BOND           DEMAND:                      OPER: LEW
=============================================================================
NOTE: 10-10-01  DISCOVERY ORDER
=============================================================================
DATE        ACTIONS, JUDGEMENTS, AND NOTES
=============================================================================
```

| | |
|---|---|
| 10-11-01 | NOTICE OF ARRAIGNMENT TO DEFENDANT AND SURETIES |
| | The Defendant in open court accompanied by attorney of record, and being duly arraigned does plead not guilty. The Defendant is granted five (5) days to file motions for special pleas. This case is set for docket-call on _Nov 9th_, 20_01_, at 9:00 A.M. The case is set for trial on _Nov 13th_, 20_01_, at 8:30 A.M.    *RMH* |
| | FILED IN OFFICE OCT 2 3 2001 |
| 10-24-01 | State's Motion for Hearing on Admissibility of Child Victim's Out of Court Statement. |
| 10-26-01 | STATE'S MOTION FOR DISCOVERY |
| 25-01 | Motion to Consolidate or Notice of Other Crimes, Wrongs and Wrongs. |
| 10/30/01 | Cases numbered 01-1001, 1002, 1003, & 1004 are consolidated by agreement.    *RMH* |

FILED IN OFFICE NOV 01 2001         CVOL 088 PAGE 332

| State of Alabama | CASE ACTION SUMMARY | Case Number |
|---|---|---|
| Unified Judicial System | **CASE ACTION SUMMARY** | CC 01-1001 |
| Form C-7 Rev. 2/79 | CONTINUATION | ID    YR    Number |

Style:    State v. William Lee Kirby

Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 11-2-01 | Request of Defendant for Production by State and Motion for Discovery |
| 12-04-01 | This case was tried before a jury and the following verdict returned: |
| | "We, the jury, find the Defendant, William Lee Kirby, ~~guilty~~ guilty of Sodomy I of Lillian J. McLees as charged in the indictment. |
| | Foreman" |
| | It is the judgment of the Court Defendant is guilty. Sentencing is set for February 28, 2002, at 8:00 A.M. |
| | FILED IN OFFICE   DEC 11 2001 |
| 12-17-01 | Order setting Habitual Offender Hearing on February 28, 2002, at 8:00 a.m. |
| 2/28/02 | Case reset for March 14, 2002, @ 8:00 AM. |
| | FILED IN OFFICE   MAR 01 2002 |
| 3/28/02 | Case reset for ~~Atty~~ April 11, 2002, @ 8:00 AM. |
| | FILED IN OFFICE   APR 10 2002 |
| 4/11/02 | |
| | VOL 653 PAGE 333 |

State of Alabama
Unified Judicial System

Form C-7  Rev. 2/79

## CASE ACTION SUMMARY
### CONTINUATION

Case Number

CC 01 1001
ID   YR   Number

Style: State v. Kirby, William Lee

Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|------|-------------------------------|
| 4/11/02 | Sentence is imposed on the Defendant as follows: |
| | 16 years in penitentiary; |
| | $ _____ fine; court costs; |
| | $ _____ to reimburse state for appointed lawyer; |
| | $ 50.00 Victim's Compensation Assessment; |
| | $ pending restitution to the Circuit Clerk; |
| | Defendant given credit for 135 days in (4 1/2 month) pretrial confinement |
| | All sums are to be paid _____ |
| | |
| | Sentence imposed in this case to run concurrent with sentence imposed in case(s) numbered CC 01 - 1002 & 1003. |
| | This Defendant is/is not eligible for Class I Status under Section 14-9-41 Code of Alabama 1975. This offense did occur on or after May 19, 1980. |
| | FILED IN OFFICE APR 17 2002 |
| 18/02 | Notice of Appeal and Request for a Court Appointed Attorney |
| 4/23/2002 | APPEAL APPOINTMENT appointing Hon Larry Cooper |
| 4.24.02 | Notice of Appeal to Court of Criminal Appeals |
| 4.24.02 | Prison Transcript issued |
| 5/13/02 | Reporter's Transcript order |
| 6/12/02 | Motion for Extension of Time to Complete and File Transcript |
| | and Order Granting an extension of 28 days from and after July 8, 2002 |
| 6/12/02 | Motion to Set an Appeal Bond for Defendant |
| 6/17/02 | Order setting Appeal Bond in the Amount of $20,000.00 |
| 6-26-02 | APPEALED TO THE COURT OF CRIMINAL APPEALS |
| | Deft. Out On Bond |
| | EVOL 653 PAGE 334 |
| 9-02 | Motion for Extension of Time |

Grand Jury No. _____ 60 _____

CC01- 1001

. TRUE BILL:---

*R. A. Caswell*
Foreperson Grand Jury

Filed in open Court on the ___ 5th ___ day of ___ Oct ___, 2001, in the presence of the Grand Jury.

*Corinne I. Hurst*
Clerk

Presented to the presiding Judge in open Court by the Foreperson of the Grand Jury, in the presence of ___ 16 ___ other Grand Jurors, and filed by order of Court this ___ 5th ___ day of ___ Oct ___, 2001.

*Corinne I. Hurst*
Clerk

Bail fixed at $ ___ 10,000 ___ this ___ 9th ___ day of ___ Oct ___, 2001.

*Robert M Harper*
Judge Presiding

Sec. 15-8-70, Code 1975.

---

## THE STATE OF ALABAMA
## LEE COUNTY
### CIRCUIT COURT
Fall Term, 2001

THE STATE
VS.
William Lee Kirby, alias
Lee Kirby

Date of Arrest:07/30/01

SID#01353811

## INDICTMENT
Sodomy First Degree
§13A-6-63

No Prosecutor

### WITNESSES:

Det. Shane Healey, OPD
Det. Cpl. Kasey Brown, OPD
Det. John Pruitt, OPD
Off. Scott Tart, OPD
Autumn Rose McLees, 221 North Budding Ave., Virginia Beach, VA
Lillian McLees, 221 North Budding Ave., Virginia Beach, VA
Dawn Beheshtzaden, 221 North Budding Ave., Virginian Beach, VA
Yarbi Cound, 2015 Gateway Dr., Opelika, AL
Brenda Moss, 1810 Corporate Dr., Opelika, AL
Dr. Linda Anz, 121 North 21st St. #23, Opelika, AL
Dorie Milford, Chesapeake Child Protection, Chesapeake, VA

Dr. Suzanne P. Starling, 935 Redgate Ave., Norfolk, VA
Sandra Fernandez, 935 Redgate Ave., Norfolk, VA
Elizabeth Kocan, 1571 Mt. Pleasant Road, Chesapeake, VA

VOL 687 PAGE 954  **HARPER**

State of Alabama
Unified Judicial System

Form CR-31    Rev. 1/96

# APPEAL BOND

(to the Court of Criminal Appeals)

Case Number

CC01-1001-1002-1003

IN THE _____ COURT OF _____ COUNTY

STATE OF ALABAMA v. _William Lee Kirby_
                              Defendant

I, _William Lee Kirby_ (Defendant), as principal,

and I (we), _Undersigned_
                    (please print)

_____ , as surety(ies),

agree to pay the State of Alabama the sum of $ _20000 00_ and such costs as authorized by law unless the above named defendant appears before the Court of Criminal Appeals at the scheduled date and time.

We hereby severally certify that we have property valued over and above all debts and liabilities that has a fair market value equal to or greater than the amount of the above bond, and we, and each of us, waive the benefit of all laws exempting property from levy and sale under execution or other process for the collection of debt by the Constitution and Laws of the State of Alabama, and we especially waive our rights to claim exempt our wages or salary, that we have under the laws of Alabama and our rights to homestead exemptions that we have under the Constitution of Alabama and the laws of the State of Alabama, as set out in a separate writing.

THE CONDITION OF THE ABOVE OBLIGATION IS SUCH, that, whereas, the above-named defendant was on the _____ day of _____ 199 ___ . convicted in the above-named court , for the offense of _____ and on the _____ day of _____ 19 _____ was sentenced to a term of _____ years in the penitentiary, from which sentence the above-named defendant has this day prayed and obtained an appeal to the Court of Criminal Appeals of Alabama.

NOW, IF THE ABOVE-NAMED DEFENDANT shall appear and abide by such judgment as may be rendered by the Court of Criminal Appeals, and if the judgment of conviction is affirmed, or the appeal is dismissed, the defendant shall surrender himself to the Sheriff of the County, at the County Jail within fifteen days from the issuance of the certificate of judgment affirming or dismissing the appeal, then this obligation will be null and void, otherwise to remain in full force and effect.

Given under our hands and seals, this the _____ day of _____ 199 ___

FILED
JUN 2 6 2002
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

Approved this _____
day of _____ , 199 ___

_Corinne T. Hurst_
Clerk of the Circuit Court

_William Lee Kirby_ (L.S.)
Signature of Principal (Defendant)

_221 Ventin PK, Opelika_
Address

_AAA Bonding_ (L.S.)
Signature of Surety

_1519 Hwy 77 LaFayette AL 36862_
Address

_____ (L.S.)
Signature of Surety

_____
Address

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

STATE OF ALABAMA,    *
                     *
v.                   *          CASE NO. CC 01-001, 002, 003
                     *
WILLIAM LEE KIRBY,   *
                     *
    Defendant,       *

## ORDER

The MOTION TO SET APPEAL BOND FOR DEFENDANT is GRANTED. Appeal bond is set in the amount of $20,000.00.

Done and ordered this 17th day of June, 2002.

_____
Robert M. Harper
Circuit Judge

Copy to:
    Nick Abbett
    Larry G. Cooper

F I L E D

JUN 17 2002

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

|  |  |
|---|---|
| STATE OF ALABAMA, | )<br>:<br>) |
| | :<br>) |
| V. | :CASE NO. CC-2001-1001thru 1003<br>) |
| | :<br>) |
| WILLIAM LEE KIRBY,<br>     Defendant. | :<br>) |

FILED

JUN 1 2 2002

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## MOTION TO SET AN APPEAL BOND  FOR DEFENDANT

COMES NOW, WILLIAM LEE KIRBY, Defendant, by and through his attorney of record in the above styled case and moves this court to consider his application for an Appeal Bond . As grounds therefore, Defendant shows as follows:

1.    Defendant is currently being held at the Lee County Jail with no bond.

2.    Defendant was found guilty on or about December 14, 2001, denied probation and sentenced on February 28, 2002 and is currently in the  Lee County Jail.

3.    Defendant filed for an appeal on or about April 18, 2002.

4.    The alleged victim in the case lives out of state and Defendant lives locally. Defendant has been incarcerated for approximately six months at the time of the filing of this motion.

Wherefore, these premises considered, Defendant hereby requests that this Honorable Court consider setting a reasonable Appeal Bond in this matter for the Defendant.

Respectfully submitted,

Larry G. Cooper
Attorney for Defendant

0009

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Motion to Set Appeal Bond upon Hon. Nick Abbett, Lee County District Attorney, by placing an exact copy of the same in his box maintained by the Clerk for him at the Lee County Justice Center.

Dated this the 12th day of    JUNE    , 2002.

Larry G. Cooper
Attorney for Defendant

Larry G. Cooper
Attorney for Defendant
P.O. Box 1868
Auburn, AL. 36831-1868
334-502-0022

# IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

STATE OF ALABAMA      *

         PLAINTIFF      *    **CRIMINAL DIVISION**

          *    CASE NUMBER _CC 01-1001,_

         v.      *        _1002, 1003, 1004_

          *

_WILLIAM LEE KIRBY_   *

          *

      DEFENDANT     *

## MOTION FOR EXTENSION OF TIME TO COMPLETE AND FILE TRANSCRIPT

FILED
JUN 12 2002
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

     Comes now the Court Reporter who reported the evidence and proceedings in the above-styled cause and moves the Court for an extension of time in which to complete and file the transcript of the evidence.

     Dated this the _10th_ day of _June_, 200_2_.

_Willie T. Bennett_

          Willie T. Bennett, Court Reporter

### ORDER

     For good cause shown the Court Reporter is granted an extension of twenty-eight (28) days from and after _July 8th_, 200_2_, in which to complete and file the transcript of the evidence in the above-styled cause.

     DONE, this the _10th_ day of _June_, 200_2_

          Robert M. Harper
           Circuit Judge

| State of Alabama Unified Judicial System Form ARAP- 1C    8/91 | **REPORTER'S TRANSCRIPT ORDER -- CRIMINAL** See Rules 10(c) and 11(b) of the Alabama Rules of Appellate Procedure (A.R. App.P.) | Criminal Appeal Number CR - 2001 - 1540 |

TO BE COMPLETED BY COUNSEL FOR THE APPELLANT OR BY THE APPELLANT IF NOT REPRESENTED AND FILED WITH THE WRITTEN NOTICE OF APPEAL OR FILED WITHIN 7 DAYS AFTER ORAL NOTICE OF APPEAL IS GIVEN.

☒CIRCUIT COURT  ☐DISTRICT COURT  ☐JUVENILE COURT OF _____

William Lee Kirby

F I L E D COUNTY

MAY 13 2002

v.  ☒STATE OF ALABAMA  ☐MUNICIPALITY OF _____ Appellant

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| Case Number CC - 2001 - 1001 | Date of Judgment/Sentence/Order 7 - 28 - 2002 |
| Date of Notice of Appeal Oral:    Written:  4-18-02 | Indigent Status Granted: ☒Yes  ☐No |

**PART 1. TO BE SIGNED IF THE APPEAL WILL NOT HAVE A COURT REPORTER'S TRANSCRIPT:**

I CERTIFY THAT NO REPORTER'S TRANSCRIPT IS EXPECTED AND THAT THE RECORD ON APPEAL SHALL CONSIST OF THE CLERK'S RECORD ONLY. IF THE APPEAL IS FROM DISTRICT COURT OR JUVENILE COURT, I ALSO CERTIFY (1) THAT A STIPULATION OF FACTS WILL BE INCLUDED IN THE CLERK'S RECORD AND THAT THE APPELLANT WAIVES HIS RIGHT TO A JURY TRIAL IF SO ENTITLED; OR (2) THAT THE PARTIES HAVE STIPULATED THAT ONLY QUESTIONS OF LAW ARE INVOLVED AND THAT THE QUESTIONS WILL BE CERTIFIED BY THE JUVENILE/DISTRICT COURT FOR INCLUSION IN THE CLERK'S RECORD (SEE RULE 28(A)(1), ALABAMA RULES OF JUVENILE PROCEDURE, AND §12-72, *CODE OF ALABAMA 1975*).

| Signature | Date | Print or Type Name |

**PART 2. DESIGNATION OF PROCEEDINGS TO BE TRANSCRIBED.** Request is hereby made to the court reporter(s) indicated below for a transcript of the following proceedings in the above referenced case (see Rule 10(c)(2), Alabama Rules of Appellate Procedure (A.R.App.P.)):

MARK PROCEEDINGS REQUESTED:

**COURT REPORTER(S)**

A. ☐TRIAL PROCEEDINGS - Although this designation will include the judgment and sentence proceedings, a transcript of the organization of the jury and arguments of counsel must be designated separately.

Willie T. Bennett
Fairview Ave
Opelika AL

B. ☒ORGANIZATION OF THE JURY - This designation will include voir dire examination and challenges for cause. Note that in noncapital cases the voir dire of the jury will not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)

C. ☐ARGUMENTS OF COUNSEL - Note that in noncapital cases the arguments of counsel will not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)

IN ADDITION TO ANY PROCEEDINGS DESIGNATED ABOVE, SPECIAL REQUEST IS HEREBY MADE TO INCLUDE THE FOLLOWING PROCEEDINGS IN THE REPORTER'S TRANSCRIPT PORTION OF THE RECORD ON APPEAL. (ATTACH ADDITIONAL PAGES IF NECESSARY):

| ADDITIONAL PROCEEDINGS REQUESTED | DATE | COURT REPORTER(S) |
| D. _____ | | _____ |
| E. _____ | | _____ |
| F. _____ | | _____ |
| G. _____ | | _____ |

**IMPORTANT NOTICE:** The court reporter who reported the proceedings for which a transcript is requested must be identified on this form to be effective. Additionally, it is important to note that the appellant may not be permitted to raise any issue on appeal relating to any proceedings in the case that are not specifically designated on this form for inclusion in the reporter's transcript. A general designation such as "all proceedings" is not sufficient. (See Rule 10(c)(2), A.R.App.P.)

**PART 3. MUST BE SIGNED IF THE APPEAL WILL HAVE A COURT REPORTER''S TRANSCRIPT:**

I CERTIFY THAT I HAVE DISTRIBUTED THIS FORM AS SET OUT BELOW. I ALSO CERTIFY (1) THAT I HAVE MADE SATISFACTORY FINANCIAL ARRANGEMENTS WITH EACH COURT REPORTER LISTED ABOVE FOR PREPARING HIS OR HER PORTION OF THE REPORTER'S TRANSCRIPT HEREIN REQUESTED; OR (2) THAT THE APPELLANT PROCEEDED AT TRIAL AS AN INDIGENT AND THAT THAT STATUS HAS NOT BEEN REVOKED; OR, (3) THAT THE APPELLANT HAS BEEN GIVEN PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS.

| Larry R. Cooper  Signature | 5/13/02  Date | Larry G. Cooper  Print or Type Name |

**DISTRIBUTION: Original filed with Clerk of Trial Court and copies mailed to:** (1) Clerk of the Court of Criminal Appeals, (2) the District Attorney, (3) the Attorney General or the municipal prosecutor in lieu of the District Attorney and the Attorney General if the appeal is from a municipal conviction, and (4) to each Court Reporter who reported proceedings designated for inclusion in the reporter's transcript

0012

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA, CRIMINAL DIVISION

A P P E A L   A P P O I N T M E N T

STATE OF ALABAMA
-v-

CASE NO: __CC-01-1001__

WILLIAM LEE KIRBY

Notice having been given for appeal in the above styled case, the Honorable
__LARRY COOPER_____ is hereby appointed to represent the Defendant
in said appeal.

It is further ordered that the Court Reporter prepare a transcript of the evidence
and file the same with the Clerk of the Court, and that the Clerk prepare a transcript of
the record and file it with the Court of Appeals.

DONE this the __23RD__ day of __APRIL_____, 20 __02__.


_____
CIRCUIT JUDGE


Original:     Court File
cc:           Attorney
              Court Administrator
              Court Reporter

*Restitution Pleading*
*- Travel from*
*Virginia*
*- Mother &*
*2 children*

IN THE CIRCUIT COURT OF

PLAINTIFF,    F I L E D    LEE COUNTY, ALABAMA

DEC 17 2001

VS.

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

William Lee Kirby,

DEFENDANT.    *    CASE NO(S). CC-01-1001,1002,1003

## ORDER SETTING CASE FOR HABITUAL OFFENDER HEARING

On December 4, 2001, the defendant in this case, William Lee Kirby, alias, was found guilty by a jury of the charges of Rape in the First Degree, a Class A Felony; Sodomy in the First Degree, a Class A Felony; Sodomy in the First Degree, a Class A Felony. After entry of judgment by the Court based upon the verdict of the jury, but prior to sentencing of the defendant, Assistant District Attorney, Honorable David Glanzer moved that sentencing be continued in order that the Court could conduct a hearing to determine whether or not the defendant is a Habitual Offender under Section 13A-5-9 of the Code of Alabama, 1975. The Court thereupon continued sentencing and ordered that the defendant remain in jail pending a Habitual Offender Hearing.

In compliance with the applicable Alabama law, the District Attorney has now furnished to the Court the record of the prior convictions upon which the State intends to proceed to establish the prior convictions of the defendant, the alleged prior conviction(s) being as follows:

(1) **Conviction:** Breaking and Entering Motor Vehicle, Case # CC 95-431, on May 4, 1995, in Lee County, Alabama:

(2) **Conviction:** Breaking and Entering Motor Vehicle, Case# CC 95-433, on May 4, 1995, in Lee County, Alabama:

(3) **Conviction:** Breaking and Entering Motor Vehicle, Case # CC 95-435, on May 4, 1995, in Lee County, Alabama:

It is the opinion of the Court that a hearing should be held, after reasonable notice given to the defendant, for the purpose of allowing the State to establish the alleged prior conviction(s) of the defendant.

0014

## IT IS, THEREFORE, ORDERED AND ADJUDGED BY THE COURT

as follows:

1. That a Habitual Offender Hearing is hereby set for February 28, 2002, at 8:00 a.m. in the Courtroom of the Lee County Justice Center, 2311 Gateway Drive, Opelika, Alabama, for the purpose of allowing the State of Alabama to establish alleged prior convictions of this defendant and thereby determine whether or not he should be sentenced as a Habitual Offender;

2. That this hearing shall be conducted in accordance with the applicable Alabama Law;

3. That the Clerk of this Court mail or deliver a copy of this Order to the following:

Hon. Nick Abbett                   Hon. Kenneth Funderburk
District Attorney                  1313 Broad St.
Lee County Justice Center          Phenix City, AL. 36867
Opelika, AL 36801

William Lee Kirby
C/O Lee County Jail
Opelika, AL. 36801

DONE this the _17_ day of __Dec__, 2001.

_____
CIRCUIT JUDGE Robert M. Harper

0015

We, the jury, find the Defendant, William Lee Kirby, guilty of Sodomy I of Lillian J. McLees as charged in the indictment.

*Jerry Wilks*

Foreman

We, the jury, find the Defendant not guilty of the Sodomy of Lillian J. McLees.

Foreman

IN THE DISTRICT COURT OF LEE COUNTY

STATE OF ALABAMA



0016

F I L E D

NOV - 2 2001

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

| STATE OF ALABAMA | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | * |
| | * |
| WILLIAM LEE KIRBY, | * |
| | * |
| Defendant. | * |

CASE NOS. CC-01-1001, 1002
1003 & 1004

### REQUEST OF DEFENDANT FOR PRODUCTION BY STATE AND MOTION FOR DISCOVERY

Comes now the named Defendant in the above styled case and moves the Court to require the State through the District Attorney of this Circuit to produce and permit the Defendant to inspect and copy the following documents, pictures and articles:

1.      Copies of all reports and memoranda connected with the said charges against the named Defendant.

2.      All written statements of witnesses in the possession of the prosecutor relating to the charges against the named Defendant in the above styled case.

3.      Names, addresses and telephone numbers and whereabouts of all witnesses to be called by the State in the trial of the named Defendant.

4.      Statements of all persons including memoranda, summaries or recordings of such statements of any person, made to any law enforcement officer or the investigative staff of any prosecutor in any way connected with the above styled indictment.

5.      All memoranda, documents and reports of all law enforcement officers connected with subject matter of the indictment referred to above as well as the same of the investigative staff of all prosecutors.

6.   Results of all reports of any scientific tests or experiments or studies made in connection with the above styled case and all copies of such reports.

7.   All fingerprint documents and reports related to the assault alleged to have been committed by this Defendant.

8.   Names and addresses of all persons who have some knowledge of facts of the present case.

9.   The full names and addresses of all persons who have given information to the prosecuting attorney or law enforcement officers relating to the arrest of the Defendant and the charges against him/her.

10.  The criminal records and any list or summary reflecting criminal records of all person whom the State intends to call as a witness in the trial of the named Defendant.

11.  All written and recorded statements and all summaries or memoranda of any oral or written statements made by the named Defendant.

12.  All diagrams, sketches and pictures which have been made by or shown to any witness or prospective witness in the above styled case.

13.  The transcript, minutes and records of the above styled indictment.

14.  A detailed description of all physical items other than documents and pictures which the prosecutor anticipates using in the trial of the named Defendant and the exact place where and under whose custody such items are being held.

This Motion is made under the authority of Brady v. Maryland, 373 U.S. 83, 83S. CT 1194, 10 L. Ed. 215 (1963); Giles v. Maryland, 386 U.S. 66, 87 S. Ct. 793, 17 L. Ed. 2d 737 (1967); and Williams v. Dutton, 400 Fed. 2d 797 (5th Cir. 1968).

The aforesaid documents are in the possession of the State or are available to the District Attorney and are favorable to the Defendant as to the issues of innocence and punishment.

That all of said documents, pictures and articles are relevant, significant and constitute substantial material evidence and will be useful to the named Defendant as evidence upon his/her trial under said indictment.

0018

That the named Defendant cannot safely go to trial on this indictment without the production of said documents and in their absence will be denied the due process of law as guaranteed by Article I, Section VI, of the Constitution of the State of Alabama and the Fifth Amendment of the Constitution of the United States of America made applicable to the States through the Fourteenth Amendment to the Constitution of the United States.    That without the production of the documents referred to above, the Defendant's counsel will not be able to effectively represent him/her in the above styled case; and thus he/she will be denied the right of counsel which is guaranteed to him/her under the provisions of the Article I, Section VI, of the Alabama Constitution, and the Sixth Amendment of the United States Constitution made applicable to the States through the due process clause of the Fourteenth Amendment of the United States through the due process clause of the Fourteenth Amendment of the United States Constitution.

WHEREFORE, the named Defendant prays:

(a)  That the State be required to produce all documents and other evidence referred to above.

(b)  Without waiving his/her right to have his/her counsel examine said documents, pictures and articles, if the Court does not permit this to be done, that the Court conduct an in camera examination of said documents, pictures and articles, and his/her counsel be permitted to see and copy or reproduce any of said documents, pictures and articles which the Court determines to be favorable to the named Defendant as to the question of quilt or punishment or for the purpose of impeaching any of the witnesses to be called by the State in the trial of said named Defendant.

(c)  That if any part of said documentary evidence is not made available to the named Defendant prior to the commencement of his/her trial, then without waiving his/her right to the production of said evidence prior to his/her trial, he/she respectfully moves the Court for an Order directing the District Attorney to produce all such documents and evidence and to submit the same to his/her counsel at the close of the State's evidence.

(d)  Without waiving the foregoing, the Defendant requests that an exact copy be made of each item which is not presented to defense counsel and that the same be sealed and included in the record of this case for the purpose of insuring effective review of the Court's denial of the Defendant's previous request for disclosure.

(e)  That the duty of the District Attorney to disclose pursuant to this Motion be considered as continuing up until  and through the trial and post judgment proceedings.

DATED this _____ day of October, 2001.

<div style="text-align:right">

With Best Regards,

FUNDERBURK, DAY & LANE


_____
Kenneth L. Funderburk
Attorneys for Defendant
1313 Broad Street
P.O. Box 1268
Phenix City, Alabama  36868-1268
(334) 297-2900
FUN002

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document, *Request of Defendant for Production by State and Motion for Discovery*, has been served on the following counsel of record by United States mail, postage prepaid, via first class mail, this the day of October, 2001.

Nick Abbett, Esq.
District Attorney, Lee County
2311 Gateway Drive
Opelika, AL 36801

Jerry W. Hauser
P.O. Box 156
Auburn, AL 36831-0156


OF COUNSEL



STATE OF ALABAMA,                              IN THE CIRCUIT COURT OF

     PLAINTIFF,                              LEE COUNTY, ALABAMA

  VS.

William Lee Kirby,

     DEFENDANT.                         CASE NO. CC-01-1001,1002,
                                                      1003,1004

## MOTION TO CONSOLIDATE OR NOTICE OF OTHER CRIMES, WRONGS AND WRONGS

         COMES NOW the State of Alabama by and through its Chief Assistant District Attorney for the Thirty-Seventh Judicial Circuit, David W. Glanzer, and moves this court to consolidate the above styled cases or in the alternative gives Notice of the States intent to use other crimes, wrongs or acts under the authority of Rule 404(b) of the Alabama Rules of Evidence and offers in support thereof:

(1)    The defendant is indicted for two charges of Rape I and Sodomy I for actions allegedly against two of his step children under the age of ten.

(2)    The offenses are of the same or similar character, or are based on the same conduct or are otherwise connected in their commission, are alleged to be part of a common scheme or plan.

(3)    In addition, the victims live out of state and it would provide judicial economy to handle all cases at the same time.

## Or In the Alternative

(4)    Evidence of other crimes, wrongs or acts are admissible for purposes such as motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident in accordance with Rule 404(b), Alabama Rules of Evidence.

(5)    The State intends to place both victims on the witness stand during its case in chief against the defendant whether cases consolidated or not and further intends to provide child victims out of court statements as defined in Sec 15-25-39 and Sec 15-25-30, et.seq. (separate motion filed).

0022

Offered this the 25<sup>th</sup> day of October 2001.

_____
David W. Glanzer
Chief Assistant District Attorney


### CERTIFICATE OF SERVICE

I do hereby certify that I have on this date, October 25, 2001, served a copy of the foregoing Motion on the attorney for the defendant, William Lee Kirby, that being the Honorable Kenneth Funderburk, 1313 Broad Street, Phenix City, AL  36867, by placing a copy of the same in the U.S. Mail, postage prepaid.

_____
David W. Glanzer
Chief Assistant District Attorney

0023

STATE OF ALABAMA,                    *        IN THE CIRCUIT COURT OF
                                     *
        PLAINTIFF,                LEE COUNTY, ALABAMA

    VS.                                       NO(S).CASE   CC-01-1001
                                                               01-1002
William Lee Kirby,                                             01-1003
        DEFENDANT.                                             01-1004

              STATE'S MOTION FOR HEARING ON
         ADMISSIBILITY OF CHILD VICTIM'S OUT
                    OF COURT STATEMENT

        Comes now, the State of Alabama, by and through its Chief
Assistant District Attorney, Honorable David W. Glanzer, and shows
unto the Court as follows:

        1. The above named defendant is presently charged with
Rape and Sodomy in the First Degree, crimes involving sexual
offenses against two children, as defined by §15-25-39 of the Code
of Alabama, 1975.

        2. That the child victims in these cases are less than 12
years of age and have made reliable and trustworthy, out-of-court
statements which the State intends to offer in addition to and/or
in lieu of the child victims' courtroom testimony, pursuant to "The
Child Sexual Abuse Victim Protection Act of 1989", §15-25-30
through §15-25-40, of the Code of Alabama, 1975.

        3. That said statements have been documented and have
been or will be furnished to the defense in discovery, attached
hereto as exhibits A, B, C and D.

        4. The petitioner expects the two children to be
available for cross-examination in this matter.

        Wherefore, these premises considered the State
respectfully requests that the Court conduct a pre-trial hearing to
determine the admissibility of said out-of-court statements.

                              Respectfully submitted,

                              _____
                              David W. Glanzer
                              Chief Assistant District Attorney

0024

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this date, October 24, 2001, served a copy of the foregoing Motion upon the attorney for the defendant, Hon. Jerry Hauser, P.O. Box 156, Auburn, AL 36831-0156, by placing a copy of same in the U.S. Mail, postage prepaid.

David W. Glanzer
Chief Assistant District Attorney

Exhibit "A"

**STATEMENT BY LILLIAN McLEES**
Interview 3/21/01

0025

Lillian stated that her birthday was 5/11/91. Her sister Autumn is 8 years old (born 11/4) and her sister Elizabeth is 3 or 4 years old. Lillian stated she currently lives with Robert (Bob) Hepner and Princess Hepner (maternal grandfather and step-grandmother). Her real father is Ken Mc Lees and he lives in Wisconsin. We discussed the difference between the truth and a lie and Lillian had a clear concept of what the truth was, and what a lie was. Lillian named her private parts as "chest", "lower part" or "pie" (vaginal area) and "butt". She called a man's private his "peanut". She was not afraid to challenge me during the interview, and appeared to be age appropriate physically and average or above average intelligence.

When discussing what this worker's job was, Lillian appeared to understand why we were there. Lillian indicated that she and friends (Sydney, Chandler. Jackie and Lauren) were talking and she disclosed that Lee Kirby, her mother's boyfriend, had sexually touched her. She stated that she was just tired of keeping the secret. She stated the last time she saw Lee was at the mall in Virginia around Christmas when he came to see her sister Elizabeth ("Pookie").

Lillian stated they lived in Alabama off and on when she was 4 or 5 years old. At some point they shared a house with Lee Kirby. Lillian believes his job was putting in stereos, and also believes Lee Kirby has been in jail. Lillian stated that lots of time in the household there was "real violence". She elaborated that once she saw a big bruise on her mothers left eye, and once during a fight with her mother, Lee pulled the phone out of the outlet. She stated her mother once left Lee, but "he told us he'd change…He lied". Lillian stated she thought her mother loved Lee, and that was part of why she and her sister did not want to tell her what was happening with Lee. Lillian believes her mother thought the girls liked Lee, but she stated they did not and were afraid of him. Lillian described Lee as "ugly" and then elaborated that he was "fat, had short black hair, red cheeks, and brown eyes". Lillian later drew a picture of Lee…see attached picture.

Lillian stated that when she lived in Alabama, her mother was at work (she thought it was a "night shift") and Lee Kirby (who she describes as her "sister Pookie's 's father") was their caretaker. Lillian stated Lee "would wake us up" (her and Autumn) when they were sleeping in their bedroom. Lillian states that she and Autumn had bunk beds in the same room and that "Pookie" shared the same room but was in a crib. According to Lillian, sometimes Lee would take her out of the room, or sometimes he would take Autumn out. It was not until sometime later that the girls talked and realized that he was touching both of them. They made a pack to keep this a secret between the two of them. Lee had threatened them that if they told, "he'd do it harder".

Lillian stated that after Lee Kirby woke her up, he would take her to his room. She recalls this happening almost the entire year that she attended the second grade. She also recalls it happening in the summer after second grade, even after Autumn had moved to Virginia

OCT 11 2001

0026

to live with the maternal grandfather and his wife. She could not be specific on the number of times, but stated she thought more than five times ..."more than once for sure".

Lillian recalled that Lee would take off her clothes (usually pajamas) and then sometimes Lee would touch her, or sometimes he would ask her to touch him. Lillian stated she touched Lee "mostly my hands", but recalled that "once" she touched his private with her mouth. Lillian related that they got "options". When asked to explain what that meant, Lillian gave an example: She could get a spanking with Lee's belt, panties down, and then have to stand in the corner....or she could do what Lee told her to do. If she could not give him an answer quickly enough, he would pick. When asked what Lee would pick, Lillian replied that he would pick him touching her.

Lillian stated that sometimes Lee would put his "peanut in me". She stated Lee sometimes put his "peanut" in her butt, and sometimes her "pie". Lillian described Lee Kirby's "peanut" as "felt hard"; "kind of pink"; "felt disgusting"; "kind of long" and "hairy" ("black"). Lillian said, "It hurt" when his "peanut" touched her "pie". Lillian stated that Lee asked her if it hurt, but "I couldn't say anything". She did not appear to have knowledge of anything coming out of his "peanut". When he was finished, he would tell her to "get a bath... put your clothes on... and go to bed". Touching usually happened on Lee's bed or on the couch. The last time Lillian remembered being touched by Lee was on the day she returned from a visit to Virginia (somewhere towards the end of her second grade school year). Lillian stated she came home on a bus and her mother picked her up from the bus station. Her mother had to go back to work after she picked Lillian up. Lee watched her after her mother went to work. Lillian stated that Lee touched her that day in her front private with his "peanut".

Lillian stated that she never saw exactly what happened to her sister Autumn. However, Lillian recalled that once Autumn was injured ("split her pie") and that Autumn told their mother that it happened at school on the balance beam. According to Lillian, Autumn was bleeding and mother took her to the doctor. Lillian related that Autumn did not tell the doctor or her mother what actually happened, but later told Lillian that the injury was caused by something that happened between Autumn and Lee. Lillian was not sure if Autumn would speak to this worker because she stated that "we promised" we'd keep the secret. Lillian stated she never had bleeding.

Lillian is not aware of anything happening to Elizabeth. She stated sometimes Lee slept with Elizabeth, and once her sister found clothes on the floor...but Lillian believes Elizabeth is a favored child (she did not have chores) and "was an angel".

OCT 11 2001

3



OCT 11 2001

Lee treated me and Autumn in ways that we didn't
like.

Lee hurt us in ways when you where not
t home.

CoPy

3/21/01 -
Note written in
Counselors office as
t what Lillian would
like t tell her mother

OCT 11 2001

INTERVIEW WITH:    AUTUMN MCKLEES
DATE:              MARCH 22, 2001
BEGAN TYPING:     MARCH 28, 2001
LOCATION:        BUTTS ROAD PRIMARY SCHOOL
PRESENT:         DORIE MILFORD, CHESAPEAKE CPS

0029

**(SIDE A)**

1   MILFORD:   AUTUMN, DO YOU KNOW?
2
3   MCKLEES:   MARCH 22$^{ND}$.
4
5   MILFORD:   VERY GOOD. IT IS. I THINK YOU'RE RIGHT BECAUSE I LOVE
6                THE NUMBER 22. MARCH 22$^{ND}$ AND UM I'M WITH AUTUMN
7                MCKLEES, RIGHT?
8
9   MCKLEES:   UH-HUH.
10
11  MILFORD:   AND WHERE ARE WE?
12
13  MCKLEES:   BUTTS ROAD PRIMARY.
14
15  MILFORD:   BUTTS ROAD PRIMARY SCHOOL. AND AUTUMN WAS TELLING
16              ME THAT SHE IS IN SECOND GRADE? IS THAT RIGHT?

18  MCKLEES:   (MOTIONS)
19
20  MILFORD:   OK. AND UM I ASKED AUTUMN IF SHE HAD ANY IDEA
21             SOMEONE MIGHT COME TO TALK WITH HER TODAY AND SHE
22             SAID NO. AND THAT'S OK, I JUST DIDN'T KNOW IF LAST
23             NIGHT MAYBE HER FAMILY TALKED TO HER ABOUT SOME
24             THINGS. UM . . . OK LET ME EXPLAIN A LITTLE BIT YOU SEE
25             MY NAME ON THE CARD THERE. AND I DON'T KNOW IF YOU
26             CAN READ THIS OVER HERE LET ME SEE. WELL IT DOESN'T
27             SAY. THESE ARE NEW CARDS. SOMETIMES IT JUST SAYS
28             DEPARTMENT OF HUMAN SERVICES. UM, I HAVE A VERY
29             SPECIAL JOB, I THINK. AND MY JOB IS PRETTY MUCH TO DO
30             NOTHING BUT TALK TO CHILDREN. AND THE REASON I COME
31             OUT AND TALK TO CHILDREN . . . SOMEBODY EITHER CALLS
32             ME OR SENDS ME A LETTER OR SENDS IT TO MY OFFICE
33             ACTUALLY AND SAYS THEY'RE WORRIED ABOUT A CHILD
34             FOR ONE REASON OR ANOTHER AND THEY ASK ME TO COME
35             OUT AND MAKE SURE THAT CHILDREN ARE SAFE AND MY JOB
36             PRETTY MUCH IS TO PROTECT THEM. IF SOMETHING IS
37             HAPPENING TO THEM RIGHT NOW WHERE THEY'RE IN
38             TROUBLE OR GETTING HURT, THEN I CAN HELP THEM FIX

OCT 11 2001

INTERVIEW WITH: AUTUMN MCKLEES                    PAGE 2

THAT AND IF IT'S SOMETHING THAT HAPPENED A LONG TIME
AGO, EVEN IF THEY'RE SAFE NOW, I CAN HELP THEM DEAL
WITH SOME OF THE FEELINGS AND THINGS THAT COME FROM
SOMETHING THAT HAPPENED AND WE DID GET A CONCERN
CALLED INTO US AND IT HAD TO DO WITH YOU AND IT HAD
TO DO WITH YOUR SISTER TOO. SO I TALKED TO HER
YESTERDAY AND BOTH YOUR SISTER AND YOUR MOM. WELL
YOUR SISTER TOLD ME ONE THING AND YOUR MOM TOLD ME
ANOTHER. YOUR MOM SAID THAT SOMETIMES YOU'RE KIND
OF SHY AND YOU DON'T LIKE TO TALK TO JUST ANYBODY
AND I UNDERSTAND THAT BECAUSE I HAVE A DAUGHTER
WHO IS NOW GROWN UP, BUT WHEN SHE WAS LITTLE, SHE'S
27 NOW, WHICH IS KIND OF LIKE HARD FOR ME TO BELIEVE
SHE'S NOT A LITTLE GIRL ANYMORE, BUT WHEN SHE WAS
LITTLE, SHE WAS THAT WAY. SHE'S STILL KIND OF IS, EVEN
AT 27. SHE JUST DOESN'T TALK TO ANYBODY AND SHE DOES
SOME THINGS THAT ARE REAL PERSONAL INSIDE FOR HER,
SHE DOESN'T SHARE WITH ANYBODY SO I UNDERSTAND
THAT. BUT I STILL HAVE A JOB THAT SAYS I'M SUPPOSED TO
MAKE SURE THAT YOU'RE SAFE AND IF ANYBODY HAS DONE
ANYTHING TO HURT YOU THAT I'M SUPPOSED TO TRY TO
TAKE CARE OF THAT AND MAKE SURE THAT PERSON DOESN'T
HURT ANYBODY ELSE AND DOESN'T HURT YOU AGAIN AND
DOESN'T HURT ANYBODY ELSE EITHER. AND I TALKED TO
AUTUMN, NOT AUTUMN, YOU'RE AUTUMN.

MCKLEES:    LILLIAN.

MILFORD:    (LAUGHS) LILLIAN YESTERDAY AND LILLIAN DID TELL ME
SOME THINGS ABOUT SOMEBODY, NOBODY SHE'S SAYING IS
HURTING HER NOW, BUT THAT SOMEBODY THAT HURT HER
WHEN SHE LIVED IN ALABAMA AND SHE SAYS THAT THE TWO
OF YOU KIND OF MADE A PROMISE THAT NEITHER ONE OF
YOU WOULD TALK ABOUT THAT. SO SHE WASN'T GOING TO
TALK FOR YOU. SHE WAS JUST TELLING ME WHAT HAPPENED
TO HER AND THAT WHAT HAD BOTHERED HER. SO LILLIAN
AND I SPENT A LOT OF TIME TALKING AND I TAPED HER ON
THE TAPE RECORDER JUST LIKE I TAPED YOU, AND
YESTERDAY I HAD ANOTHER LADY WITH ME, BUT SHE
COULDN'T COME TODAY, SO I CAME OUT BY MYSELF TODAY.
AND WHAT I WANT TO SEE IS THAT IF YOU FEEL LIKE YOU
CAN TALK A LITTLE BIT WITH ME MAYBE I CAN FIND OUT
FROM YOU WHETHER ANYBODY HAS EVER DONE ANYTHING
TO HURT YOU OR MAKE YOU FEEL UNCOMFORTABLE OR

OCT 11 2001

INTERVIEW WITH: AUTUMN MCKLEES

PAGE 3

SCARE YOU OR . . . YOU KNOW THERE'S A LOT OF WAYS
PEOPLE CAN ABUSE PEOPLE AND MY JOB IS ALL ABOUT
GROWN-UPS THAT HURT OR ABUSE CHILDREN AND
SOMETIMES GROWN-UPS HIT THEM. SOMETIMES GROWN-UPS
DON'T FEED THEM. SOMETIMES THEY TOUCH THEM IN
PLACES THEY SHOULDN'T. SOMETIMES THEY DON'T TAKE
THEM TO THE DOCTOR WHEN THEY SHOULD. SOMETIMES
THEY DON'T GET THEM MEDICINES WHEN THEY'RE
SUPPOSED TO HAVE CERTAIN MEDICINES OR CERTAIN TESTS
SO THERE'S LOTS OF WAYS THAT GROWN-UPS SOMETIMES DO
SOMETHING TO HURT CHILDREN. IT'S NOT EVER THE CHILD'S
FAULT WHEN SOMETHING HAPPENS BECAUSE THEY'RE JUST
CHILDREN AND THEY DON'T KNOW ANY BETTER, BUT
SOMEBODY GROWN-UP IS SUPPOSED TO KNOW WHAT'S
RIGHT AND WHAT'S WRONG. SOMETIMES KIDS GET IN REAL
HARD SITUATIONS, SO I'M HERE TO TALK TO YOU ABOUT
ALABAMA PRETTY MUCH. YOU CAN TELL ME WE'LL TALK
ABOUT WHAT'S HAPPENED HERE AND IF THERE'S ANYTHING
HAPPENING HERE THAT'S BOTHERING YOU, WE CAN TALK
ABOUT THAT TOO, BUT MOSTLY SOMEONE HAS LED ME TO
BELIEVE THAT SOMEBODY IN ALABAMA DID SOMETHING TO
HARM YOU AND THAT'S REALLY WHAT I WANT TO TALK TO
YOU ABOUT TODAY. DO YOU THINK YOU CAN TALK ABOUT
IT? AND YOU CAN GO HOME AND IF YOU WANT TO TALK TO
LILLIAN, YOU CAN. IF YOU WANT TO TALK TO YOUR MOM,
YOU CAN. LILLIAN HAD A VERY HARD TIME TALKING TO
YOUR MOM CAUSE SHE SAID SHE WANTED TO TELL HER MOM
BUT SHE JUST DIDN'T KNOW HOW TO GO ABOUT IT, SO WE
SAT TOGETHER WITH YOUR MOM YESTERDAY AND LILLIAN
TALKED TO HER SOME ABOUT SOME OF THESE THINGS AND I
DON'T KNOW . . . DO YOU HAVE ANY IDEA WHAT I'M TALKING
ABOUT?

MCKLEES:    NOT REALLY.

MILFORD:    NOT REALLY. OK CAUSE SOMETIMES I GO ON AND ON.
(LAUGHS) AND I'M IN A WHOLE DIFFERENT WORLD. WELL
LET ME ASK YOU THIS, UM FIRST OF ALL HOW OLD ARE YOU
NOW?

MCKLEES:    EIGHT.

MILFORD:    EIGHT, OK. DO YOU AND . . . AUTUMN IS A-U-T-H-U-M.

OCT 11 2001

INTERVIEW WITH:  AUTUMN MCKLEES                                    PAGE 4

MCKLEES:    NO.

MILFORD:    NO.

MCKLEES:    A-U-T-

MILFORD:    A-U-T-

MCKLEES:    U

MILFORD:    U

MCKLEES:    M-N.

MILFORD:    M-N.  OK.  DO YOU HAVE A MIDDLE NAME AUTUMN?

MCKLEES:    UH, NO.

MILFORD:    NO MIDDLE NAME.  OK.

MCKLEES:    MY FIRST NAME IS ACTUALLY ROSE, BUT THEY STARTED CALLING ME AUTUMN.

MILFORD:    OH, OK.  SO ACTUALLY AUTUMN IS YOUR MIDDLE NAME. YOU'RE ROSE AUTUMN MCKLEES.  IS THAT YOUR LAST NAME, MCKLEES WITH AN S, RIGHT?

MCKLEES:    YES MA'AM.

MILFORD:    DO YOU KNOW YOUR DATE OF BIRTH, THE DAY YOU WERE BORN?

MCKLEES:    I THINK NOVEMBER 4TH.

MILFORD:    NOVEMBER 4TH.  OK.  AND WHAT DID YOU TELL ME, YOU'RE EIGHT YEARS OLD?

MCKLEES:    YES MA'AM.

MILFORD:    SO LET'S SEE . . . THIS . . . IN 2001 (COUGHING) UH-OH.  SOUNDS LIKE YOU HAVE THE SAME KIND OF COLD THAT I HAVE.  I'VE GOT SOMETHING GOING ON TOO.  SO YOU WERE BORN IN '93.

MCKLEES:    I THINK I WAS.

OCT 1 1 2001

INTERVIEW WITH: AUTUMN MCKLEES

PAGE 5

| | | |
|---|---|---|
| 2 | MILFORD: | OK IN 1993. AND YOU'RE EIGHT AND YOU'RE GOING TO BE |
| 3 | | NINE IN NOVEMBER, IS THAT RIGHT? |
| 4 | | |
| 5 | MCKLEES: | YES. |
| 6 | | |
| 7 | MILFORD: | OK. SECOND GRADE (COUGHING). OK AND LET ME ASK YOU |
| 8 | | THIS TOO BEFORE, I'M GOING TO PUT THE DATE SO I KNOW |
| 9 | | WHAT DATE . . . BEFORE WE GET TOO MUCH FURTHER, DO |
| 10 | | YOU KNOW, CAUSE THE THINGS WE TALK ABOUT IF WE EVEN |
| 11 | | TALK ABOUT ANYTHING, I WANT THEM ALL TO BE THE |
| 12 | | TRUTH. DO YOU KNOW THE DIFFERENCE BETWEEN THE |
| 13 | | TRUTH AND A LIE? |
| 14 | | |
| 15 | MCKLEES: | (MOTIONS) |
| 16 | | |
| 17 | MILFORD: | WHAT'S THE DIFFERENCE? CAN YOU HELP ME UNDERSTAND? |
| 18 | | |
| 19 | MCKLEES: | A LIE IS WHEN YOU TELL SOMETHING ON SOMEONE ELSE, OR |
| 20 | | SOMEONE, SOMETHING THAT'S NOT REAL. |
| 21 | | |
| | MILFORD: | THAT'S NOT REAL, OK GOOD. LYING IS SOMETHING THAT'S |
| | | NOT REAL. AND WHAT'S THE TRUTH THEN? |
| 24 | | |
| 25 | MCKLEES: | SOMETHING THAT YOU TELL SOMEONE THAT IS REALLY |
| 26 | | REAL. |
| 27 | | |
| 28 | MILFORD: | THAT IS REALLY REAL. DOES THAT MEAN IT'S SOMETHING |
| 29 | | THAT REALLY HAPPENED? |
| 30 | | |
| 31 | MCKLEES: | YES. |
| 32 | | |
| 33 | MILFORD: | OK SO THE TRUTH IS REALLY REAL. UM . . . SO WHEN YOUR |
| 34 | | MOM SAID YOU HAVEN'T BEEN BACK TO VIRGINIA FOR TOO, |
| 35 | | TOO LONG. DID YOU GO TO SCHOOL IN ALABAMA? |
| 36 | | |
| 37 | MCKLEES: | YES MA'AM. |
| 38 | | |
| 39 | MILFORD: | YOU DID. WHAT GRADE DID YOU GO TO IN ALABAMA. |
| 40 | | |
| 41 | MCKLEES: | KINDERGARTEN. |
| 42 | | |
| 43 | MILFORD: | IN KINDERGARTEN. DO YOU REMEMBER THE NAME OF THE |
| | | SCHOOL? |

OCT 11 2001

INTERVIEW WITH: AUTUMN MCKLEES                                    PAGE 6

2    MCKLEES:    NO MA'AM.
3
4    MILFORD:    OK. DID YOU GO TO FIRST GRADE IN ALABAMA?
5
6    MCKLEES:    NO MA'AM.
7
8    MILFORD:    NO, JUST WENT TO KINDERGARTEN. OK. AND LET'S SEE IF
9                YOUR BIRTHDAY'S IN NOVEMBER, UM WERE YOU FOUR
10               WHEN YOU STARTED KINDERGARTEN OR WERE YOU FIVE
11               WHEN YOU STARTED KINDERGARTEN?
12
13   MCKLEES:    I THINK I WAS FOUR.
14
15   MILFORD:    OK. AND WHEN YOU WENT TO KINDERGARTEN, DO YOU
16               REMEMBER WHERE YOU LIVED?
17
18   MCKLEES:    NOT REALLY.
19
20   MILFORD:    NOT REALLY, OK. DO YOU REMEMBER WHO SHARED THE
21               HOUSE WITH YOU AND YOUR MOM?

23   MCKLEES:    LEE.
24
25   MILFORD:    LEE, OK . . . AND WAS THERE ANY . . . THERE WAS YOU AND
26               YOUR MOM AND LEE, WAS UM LILLIAN THERE?
27
28   MCKLEES:    YES MA'AM.
29
30   MILFORD:    AND . . .
31
32   MCKLEES:    AND MY OTHER SISTER, POOKIE.
33
34   MILFORD:    POOKIE. OK THAT'S ELIZABETH RIGHT?
35
36   MCKLEES:    (MOTIONS)
37
38   MILFORD:    OK POOKIE. HOW DID SHE GET THAT NICKNAME?
39
40   MCKLEES:    DAD.
41
42   MILFORD:    HE NAMED HER POOKIE? WHAT'S POOKIE STAND FOR OR IS
43               THERE SOME CHARACTER NAMED POOKIE OR?

OCT 11 2001

INTERVIEW WITH:  AUTUMN MCKLEES                    PAGE 7

MCKLEES:    I DON'T KNOW.

MILFORD:    POOKIE.  AND WHO DO YOU CALL DAD?  WHEN YOU SAY DAD,
WHO IS DAD?

MCKLEES:    KENNY.

MILFORD:    KENNY, OK.  AND IS KENNY POOKIE'S FATHER?

MCKLEES:    NO.  LEE IS POOKIE'S FATHER.

MILFORD:    OK LEE IS POOKIE'S FATHER.  SO WHO'S FATHER IS KENNY?
IS HE YOUR FATHER?

MCKLEES:    MINE AND MY SISTER'S.

MILFORD:    OK YOUR SISTER, LILLIAN?  HE'S LILLIAN'S FATHER?

MCKLEES:    YES MA'AM.

MILFORD:    AND KENNY NAMED HER POOKIE.

MCKLEES:    NO LEE NAMED HER POOKIE.

MILFORD:    OH, LEE NAMED HER POOKIE.  OK.

MCKLEES:    KENNY NEVER KNEW HER.

MILFORD:    OH SO KENNY DIDN'T . . .

MCKLEES:    SHE WAS BORN DOWN IN ALABAMA.

MILFORD:    OK.  GOT IT.  SO LEE AND POOKIE AND LILLIAN AND YOU AND
YOUR MOM ALL LIVED IN THE SAME HOUSE IN ALABAMA
WHEN YOU WERE IN KINDERGARTEN, IS THAT RIGHT?

MCKLEES:    YES MA'AM.

MILFORD:    AND ANY TIME I GET SOMETHING WRONG CAUSE SOMETIMES
I THINK YOU MEAN ONE THING AND REALLY I'VE
MISUNDERSTOOD, YOU MEAN SOMETHING ELSE.  ANYTIME
I'M WRONG YOU JUST SAY NO, NO, NO DORIE, YOU DON'T
HAVE THAT RIGHT.  OK.  DON'T BE AFRAID TO SAY THAT TO
ME BECAUSE IT'S OK.  SOMETIMES I GET MIXED UP.  SO, OK,

OCT 11 2001

0036

INTERVIEW WITH: AUTUMN MCKLEES

PAGE 8

|    |    |    |
|----|----|----|
|    |    | SO I JUST WANTED TO MAKE SURE I'M UNDERSTANDING |
| 2  |    | EVERYTHING. SO YOU ALL LIVED IN THIS APARTMENT AND |
| 3  |    | YOU WENT TO KINDERGARTEN. DO YOU REMEMBER YOUR |
| 4  |    | TEACHER'S NAME IN KINDERGARTEN? |
| 5  |    |    |
| 6  | MCKLEES: | I WAS ALWAYS TRYING TO REMEMBER IT, BUT I NEVER |
| 7  |    | REMEMBERED IT. |
| 8  |    |    |
| 9  | MILFORD: | YOU NEVER REMEMBERED IT. OK. THAT'S OK. I PROBABLY |
| 10 |    | COULDN'T TELL YOU MY KINDERGARTEN TEACHER'S NAME |
| 11 |    | EITHER. SO WHAT DID YOU THINK OF KINDERGARTEN? WAS |
| 12 |    | THAT LIKE A GOOD YEAR OR A BAD YEAR? |
| 13 |    |    |
| 14 | MCKLEES: | GOOD YEAR. |
| 15 |    |    |
| 16 | MILFORD: | GOOD YEAR, OK. AND LET'S SEE AFTER YOUR YEAR IN |
| 17 |    | KINDERGARTEN, THEN IT WAS SUMMERTIME. DID YOU STAY |
| 18 |    | IN ALABAMA OR DID YOU COME TO VIRGINIA? |
| 19 |    |    |
| 20 | MCKLEES: | I THINK WE STAYED IN ALABAMA FOR A LITTLE BIT AND |
| 21 |    | CAME UP TO VIRGINIA TO SEE MY GRANDPARENTS. |
|    |    |    |
| 3  | MILFORD: | OK. THAT'S WHERE YOU LIVE NOW WITH YOUR |
| 24 |    | GRANDPARENTS, RIGHT? DID YOU GO TO FIRST GRADE HERE |
| 25 |    | IN VIRGINIA? |
| 26 |    |    |
| 27 | MCKLEES: | YES MA'AM. |
| 28 |    |    |
| 29 | MILFORD: | OK. SO THE SUMMER BETWEEN KINDERGARTEN AND FIRST. |
| 30 |    | DID YOU COME HERE TO BUTTS ROAD FOR FIRST GRADE? |
| 31 |    |    |
| 32 | MCKLEES: | YES MA'AM (COUGHING). |
| 33 |    |    |
| 34 | MILFORD: | OK. SO LET ME ASK YOU THIS, WHILE YOU LIVED IN |
| 35 |    | ALABAMA IN THE HOUSE WITH LEE AND YOUR MOM AND |
| 36 |    | EVERYBODY AND YOU WENT TO KINDERGARTEN, DID |
| 37 |    | ANYTHING HAPPEN TO YOU WITH ANY GROWN-UP PERSON |
| 38 |    | THAT YOU WOULD SAY MIGHT HAVE HURT YOU OR MIGHT |
| 39 |    | HAVE BEEN ABUSIVE TO YOU? |
| 40 |    |    |
| 41 | MCKLEES: | HE CHOKED ME WHEN MY SISTER WASN'T AROUND. |
| 42 |    |    |
| 43 | MILFORD: | HE CHOKED YOU WHEN YOUR SISTER WASN'T AROUND? OK. |
|    |    | AND WHO WOULD HE BE? |

OCT 11 2001

INTERVIEW WITH: AUTUMN MCKLEES

1
2   MCKLEES:   LEE.
3
4   MILFORD:   LEE, OK. CAN YOU TELL ME ABOUT THAT? CHOKED YOU.
5               HOW DID HE CHOKE YOU?
6
7   MCKLEES:   PUT ME UP AGAINST THE WALL.
8
9   MILFORD:   OK LIKE, LIKE TOOK YOU BY THE SHOULDERS AND PUT YOU
10             UP AGAINST THE WALL OR HOW . . . ?
11
12   MCKLEES:   NECK.
13
14   MILFORD:   BY THE NECK. OK. PUT HIS HANDS AROUND YOUR NECK AND
15             PUT YOU UP AGAINST THE WALL AND YOU SAID WHEN YOUR
16             SISTER WASN'T THERE?
17
18   MCKLEES:   YES MA'AM.
19
20   MILFORD:   IS THAT LIKE, IS LILLIAN, LILLIAN THAT SISTER? IF LILLIAN
21             WAS THERE WHAT WOULD HAVE HAPPENED? WOULD HE NOT
2             HAVE DONE THAT?
_3
24   MCKLEES:   I DON'T THINK SO.
25
26   MILFORD:   OK. SO WHO ELSE WAS HOME BESIDES YOU AND LEE?
27
28   MCKLEES:   MY SISTER.
29
30   MILFORD:   POOKIE. SO YOU AND LEE AND POOKIE. CAN YOU
31             REMEMBER A TIME THAT THAT HAPPENED AND WHY LEE DID
32             THAT? WHAT MADE HIM PUT HIS HAND AROUND YOUR NECK
33             AND PUT YOU UP AGAINST THE WALL AND CHOKE YOU?
34
35   MCKLEES:   I DON'T KNOW.
36
37   MILFORD:   YOU DON'T KNOW WHY HE DID THAT?
38
39   MCKLEES:   UH-UH.
40
41   MILFORD:   DID YOU HAVE ANY MARKS ON YOUR NECK? YOU KNOW
42             SOMETIMES IF SOMEBODY GRABS YOU HARD IT LEAVES
43             MARKS ON YOUR NECK.

OCT 1 1 2001

0039

INTERVIEW WITH: AUTUMN MCKLEES

PAGE 10

1    MCKLEES:    I DON'T KNOW. I THINK I MIGHT HAVE.
2
3    MILFORD:    DID YOU TELL ANYBODY ABOUT THAT, THEN WHEN IT
4                HAPPENED?
5
6    MCKLEES:    UH-UH.
7
8    MILFORD:    NO, OK. OK, UM . . . DID THAT HAPPEN LIKE JUST ONE TIME OR
9                MORE THAN ONE TIME OR CAN YOU REMEMBER?
10
11    MCKLEES:    I THINK IT WAS A COUPLE OF TIMES.
12
13    MILFORD:    COUPLE OF TIMES, OK. BUT YOU DON'T REMEMBER WHAT
14                MADE LEE MAD OR WHY HE WAS MAD OR WHY HE DID THAT?
15                NO? WHEN YOU LIVED WITH THIS LEE, WHO WAS IN CHARGE
16                OF DISCIPLINE, LIKE IF YOU DID SOMETHING WRONG OR
17                YOUR SISTER DID SOMETHING WRONG? WHO WOULD PUNISH
18                YOU?
19
20    MCKLEES:    LEE.
21
22    MILFORD:    LEE WOULD. NOT YOUR MOM?
23
24    MCKLEES:    NO.
25
26    MILFORD:    NO. AND I GUESS SOMETIMES LEE CHOKED YOU TO PUNISH
27                YOU. HOW ELSE DID LEE PUNISH YOU?
28
29    MCKLEES:    WELL ACTUALLY CHOKING ME REALLY WASN'T A
30                PUNISHMENT.
31
32    MILFORD:    IT WASN'T? NO, OK. SO WHAT KIND OF PUNISHMENT DID HE
33                USE?
34
35    MCKLEES:    HE WOULD SPANK US WITH THE BELT.
36
37    MILFORD:    OK.
38
39    MCKLEES:    MY MOM KNEW ABOUT THAT.
40
41    MILFORD:    OK WHAT DID SHE SAY ABOUT THAT? I MEAN DID SHE SAY
42                THAT WAS OK FOR HIM TO DO? DO YOU REMEMBER? DID
43                SHE SAY OK LEE IF THE GIRLS DO SOMETHING WRONG, YOU

OCT 11 2001

0039

INTERVIEW WITH: AUTUMN MCKLEES

1
2
3        CAN SPANK THEM OR DID SHE SAY I DON'T REALLY THINK I
         WANT YOU TO SPANK THEM?

4   MCKLEES:   I THINK SHE SAID IT WASN'T REALLY.
5

6   MILFORD:   IT WASN'T REALLY OK. BUT WHEN YOU SAY SHE KNEW DID
7              THAT MEAN THAT SOMETIMES YOU GUYS WOULD TELL HER
8              WHEN IT HAPPENED?
9

10  MCKLEES:   (MOTIONS)
11

12  MILFORD:   YEAH. CAN YOU REMEMBER WHERE YOU GOT SPANKED?
13             LIKE WHAT PART OF YOUR BODY GOT HIT?
14

15  MCKLEES:   BUTT.
16

17  MILFORD:   BUTT, OK. AND CAN YOU REMEMBER DID YOU EVER HAVE
18             LIKE SOMETIMES PEOPLE CAN HIT EVEN WITH THE BELT
19             CAUSE LIKE IN VIRGINIA IN THIS STATE, YOU ARE ALLOWED
20             TO HIT WITH A BELT AS LONG AS YOU DON'T TRY TO HIT TOO
21             HARD OR LEAVE MARKS AND BRUISES. WHEN LEE, AND I
               DON'T KNOW WHAT ALABAMA SAYS, BUT WHEN LEE HIT
23             YOU, DID HE EVER LEAVE MARKS AND BRUISES?
24

25  MCKLEES:   (MOTIONS)
26

27  MILFORD:   HE DID. OK ON THE BUTT. AND DO YOU REMEMBER, DID YOU
28             EVER SHOW THOSE MARKS AND BRUISES TO ANYBODY?
29

30  MCKLEES:   MY MOM SEEN 'EM.
31

32  MILFORD:   YOUR MOM SAW THEM AND WHAT DID YOUR MOM SAY?
33

34  MCKLEES:   ASKED ME WHERE I GOT THEM FROM.
35

36  MILFORD:   UH-HUH AND WHAT DID YOU TELL HER?
37

38  MCKLEES:   UM, THAT LEE SPANKED US.
39

40  MILFORD:   OK.
41

42  MCKLEES:   OR SHE WAS THERE TO KNOW.
43

OCT 11 2001

INTERVIEW WITH: AUTUMN MCKLEES                    PAGE 12

MILFORD:    OK. DO YOU, IF YOUR MOM HAD SAID DON'T DO THAT LEE, I
DON'T WANT YOU TO SPANK THEM, WOULD LEE HAVE
LISTENED?

MCKLEES:    NO.

MILFORD:    NO. DOESN'T SOUND LIKE HE LISTENED TOO WELL TO
ANYBODY. NO. OK. OK SO LEE CHOKED YOU AND THAT
WASN'T PUNISHMENT THAT WAS JUST WHAT? THAT WAS
JUST WHEN HE WAS MAD?

MCKLEES:    I THINK SO.

MILFORD:    YEAH, AND THEN SOMETIMES HE SPANKED YOU ON THE BUTT
WITH A BELT. DID LEE DO ANYTHING ELSE?

MCKLEES:    I THINK MY SISTER ONCE KNEW THAT UH MY MOM GOT
HANDCUFFS FOR CHRISTMAS, HE'D TAKE THEM AND PUT
THEM BEHIND MY MOUTH . . .

MILFORD:    (LAUGHS)

MILFORD:    I MEAN BEHIND MY BACK.

MILFORD:    UH-HUH.

MCKLEES:    AND PUT ME IN THE BATHTUB.

MCKLEES:    HANDCUFFED YOUR HANDS BEHIND YOU AND PUT YOU IN
THE BATHTUB? AND WOULD THERE BE LIKE WATER IN THE
BATHTUB?

MCKLEES:    YEAH.

MILFORD:    OK AND WHAT WERE YOU SUPPOSED TO DO IN THE BATHTUB
WITH YOUR HANDS CUFFED BEHIND YOU?

MCKLEES:    PUT MY HEAD UNDER THE WATER.

MILFORD:    YOU WERE SUPPOSED TO PUT YOUR HEAD UNDER? OK. OR
DID SOMEBODY ELSE PUT YOUR HEAD UNDER?

MCKLEES:    WELL SOMETIMES I DID AND SOMETIMES HE DID.

OCT 1 1 2001

0041

INTERVIEW WITH: AUTUMN MCKLEES                    PAGE 13

| 1 | MILFORD: | OK SO WAS THAT UM WAS THAT A PUNISHMENT OR WAS |
| 2 | | THAT JUST SOMETHING HE DID SOMETIMES? |
| 3 | | |
| 4 | MCKLEES: | THAT WAS SOMETHING THAT LEE DID SOMETIMES. |
| 5 | | |
| 6 | MILFORD: | OK SO . . . WHAT WOULD MAKE HIM DECIDE HE WAS GOING |
| 7 | | TO HANDCUFF YOUR HANDS BEHIND YOU AND PUT YOU IN |
| 8 | | THE TUB? DO YOU KNOW WHAT HE WAS THINKING OR WHAT |
| 9 | | STARTED IT? |
| 10 | | |
| 11 | MCKLEES: | UH-UH. |
| 12 | | |
| 13 | MILFORD: | NO. OK. SO THE HANDCUFFS WERE YOUR MOM'S BUT SHE |
| 14 | | GOT THEM . . . HOW DID SHE GET THEM? |
| 15 | | |
| 16 | MCKLEES: | FOR CHRISTMAS. |
| 17 | | |
| 18 | MILFORD: | OK. FROM WHO? |
| 19 | | |
| 20 | MCKLEES: | UH, LEE. |
| 21 | | |
| 22 | MILFORD: | OK. AND SOMETIMES HE WOULD HANDCUFF YOUR HANDS |
| 23 | | BEHIND YOU. NOW CAN YOU TELL ME LIKE HOW THAT |
| 24 | | WOULD GO, LIKE WOULD YOU BE READY FOR BATH TIME OR |
| 25 | | WOULD YOU BE IN ALL YOUR CLOTHES AND HE WOULD SAY |
| 26 | | YOU HAVE TO COME IN THE BATHTUB OR HOW DID THAT |
| 27 | | USUALLY HAPPEN? |
| 28 | | |
| 29 | MCKLEES: | I WAS READY FOR A BATH. I WANTED TO TAKE ONE. |
| 30 | | |
| 31 | MILFORD: | SO WAS IT LIKE AT NIGHTTIME? OR MORNING, WHEN DO YOU |
| 32 | | TAKE YOUR BATH? |
| 33 | | |
| 34 | MCKLEES: | WELL SOMETIMES I TAKE IT AT NIGHT WITH MY MOM. |
| 35 | | |
| 36 | MILFORD: | OK. |
| 37 | | |
| 38 | MCKLEES: | SO I DON'T REALLY TAKE A BATH IN THE MORNING. |
| 39 | | |
| 40 | MILFORD: | OK SO IF WE SAID ANY TIME THIS HAPPENED IT WAS |
| 41 | | PROBABLY AT NIGHTTIME, WOULD THAT BE RIGHT OR NOT? |
| 42 | | |
| 43 | MCKLEES: | IN THE DAYTIME. |

OCT 1 1 2001

00472

INTERVIEW WITH: AUTUMN MCKLEES

PAGE 14

| | | |
|---|---|---|
| 1 | MILFORD: | IN THE DAYTIME. SO WOULD THAT BE LIKE IF YOU WERE IN |
| 2 | | KINDERGARTEN, WOULD THAT BE LIKE AFTER SCHOOL? OR |
| 3 | | DID IT HAPPEN BEFORE YOU WENT TO KINDERGARTEN? |
| 4 | | |
| 5 | MCKLEES: | PROBABLY BEFORE I WENT TO KINDERGARTEN. |
| 6 | | |
| 7 | MILFORD: | BEFORE YOU WENT TO KINDERGARTEN. SO BEFORE YOU |
| 8 | | WENT TO KINDERGARTEN, WAS LEE HOME IN THE DAYTIME? |
| 9 | | |
| 10 | MCKLEES: | UH-HUH. |
| 11 | | |
| 12 | MILFORD: | HE DIDN'T GO TO WORK? |
| 13 | | |
| 14 | MCKLEES: | WELL ACTUALLY HE, I THINK HE DID GO TO WORK, BUT |
| 15 | | SOMETIMES HE WOULD COME HOME EARLY. |
| 16 | | |
| 17 | MILFORD: | SOMETIMES HE'D COME HOME EARLY, OK. AND THEN WHEN |
| 18 | | HE WAS HELPING YOU TAKE A BATH, WAS ANYBODY ELSE |
| 19 | | HOME? |
| 20 | | |
| 21 | MCKLEES: | LILLIAN AND POOKIE. |
| 22 | | |
| 23 | MILFORD: | LILLIAN AND POOKIE. SO IF LILLY WAS THERE, THEN IT MUST |
| 24 | | HAVE BEEN AFTER SCHOOL TIME. |
| 25 | | |
| 26 | MCKLEES: | YES. |
| 27 | | |
| 28 | MILFORD: | WOULD THAT BE RIGHT? OK. AND DOES THAT MEAN THAT |
| 29 | | YOUR MOM WAS NOT THERE? |
| 30 | | |
| 31 | MCKLEES: | YEAH. |
| 32 | | |
| 33 | MILFORD: | YEAH. OK. SO HE WOULD COME AND SAY IT'S BATH TIME. |
| 34 | | HOW WOULD YOU KNOW IF IT WAS GOING TO BE A BATH |
| 35 | | WITH THE HANDCUFFS ON OR BATH WITHOUT THE |
| 36 | | HANDCUFFS? |
| 37 | | |
| 38 | MCKLEES: | I WOULDN'T KNOW UNTIL I SAW THE HANDCUFFS. |
| 39 | | |
| 40 | MILFORD: | WHERE DID HE KEEP THE HANDCUFFS? |
| 41 | | |
| 42 | MCKLEES: | UH . . . I THINK IN MY MOM AND DAD'S ROOM, WHICH WAS |
| 43 | | LEE AND MOM'S ROOM. |

OCT 11 2001

U043

INTERVIEW WITH: AUTUMN MCKLEES

PAGE 15

1
2
3
4
5

MILFORD: RIGHT. OK, SO TELL ME IF THE PICTURE I'M GETTING IS THE RIGHT PICTURE. SOMETIMES LEE WOULD SAY IT'S TIME TO TAKE A BATH AND YOU WOULD GO INTO THE BATHROOM AND WHO WOULD TAKE YOUR CLOTHES OFF?

6
7

MCKLEES: I WOULD.

8
9
10

MILFORD: YOU WOULD, OK. SO YOU TAKE YOUR CLOTHES OFF. DID YOU PUT THE WATER IN THE TUB OR DID LEE DO THAT?

11
12
13

MCKLEES: SOMETIMES IT WAS ALREADY THERE AND SOMETIMES I PUT THE WATER IN.

14
15
16
17

MILFORD: OK AND THEN DID YOU HAVE TO . . . COULD YOU GET IN THE TUB BY YOURSELF OR DID YOU HAVE TO WAIT FOR LEE TO COME IN OR . . .

18
19
20

MCKLEES: I COULD, BUT BY THE TIME I GOT TO THE WATER IN THE BATHTUB HE PUT THE HANDCUFFS ON.

21
22
23
24

MILFORD: OK SO HE WOULD COME IN AND PUT THE HANDCUFFS ON YOU AND THE WAY YOU SHOW IT IS LIKE YOUR HANDS WERE HANDCUFFED BEHIND YOUR BACK?

25
26

MCKLEES: YES MA'AM.

27
28

MILFORD: OK SO THEN COULD YOU WASH YOURSELF?

29
30

MCKLEES: NO.

31
32
33
34

MILFORD: NO, SO YOU WERE IN THE BATHTUB AND THERE WAS WATER IN THE BATHTUB AND LEE WAS THERE, AND POOKIE AND LILLIAN WERE IN THE BATHROOM TOO?

35
36

MCKLEES: NO THEY WERE CLEANING UP THE HOUSE.

37
38
39

MILFORD: OK THEY WERE CLEANING UP THE HOUSE AND SO DID YOU GET WASHED AT ALL?

40
41

MCKLEES: NO.

42
43

MILFORD: NO, OK. SO THEN WHAT WOULD HAPPEN? TELL ME WHAT WOULD HAPPEN.

OCT 1 1 2001

0044

INTERVIEW WITH: AUTUMN MCKLEES                                  PAGE 16

1   MCKLEES:    HE DUNKED MY HEAD UNDER THE WATER.
2
3   MILFORD:    HE DUNKED YOUR HEAD UNDER THE WATER. AND COULD
4               YOU BREATHE?
5
6   MCKLEES:    NO.
7
8   MILFORD:    NO. WERE YOU SITTING . . . THE PICTURE I GET IS LIKE I
9               GUESS I'M THINKING ABOUT WHEN I SIT IN THE TUB, IF . . .
10              LET'S SEE IF I CAN DRAW A PICTURE. MAYBE I SHOULD HAVE
11              YOU DRAW A PICTURE THAT'S PROBABLY A BETTER IDEA. I
12              DON'T THINK I BROUGHT MY MARKERS WITH ME TODAY, BUT
13              WE CAN DO IT WITH A PEN. SAY THAT THIS IS THE BATHTUB.
14              THAT'S NOT A VERY GOOD BATHTUB (LAUGHS). OK MAYBE
15              WE'LL HAVE MORE LUCK WITH A SQUARE BATHTUB. THIS IS
16              THE BATHTUB. AND HERE'S LIKE THE SPIGOT WHERE THE
17              WATER COMES INTO THE TUB AND HERE'S LIKE THE HOT
18              THING AND THE COLD THING. HOW WOULD YOUR BODY BE
19              IN THE TUB? MAYBE DO ME EVEN A STICK FIGURE OR
20              SOMETHING.
21
22  MCKLEES:    HEAD WOULD BE DOWN HERE AND FEET RIGHT HERE.
23
24  MILFORD:    OK.
25
26  MCKLEES:    NECK . . . THIS ARM . . .
27
28  MILFORD:    OK SO ARE YOU SITTING ON YOUR BUTT OR ARE YOU LAYING
29              LIKE ON YOUR . . . ?
30
31  MCKLEES:    I'M LAYING ON MY TUMMY.
32
33  MILFORD:    YOU'RE LAYING ON YOUR TUMMY, OK. OK THAT HELPS ME
34              UNDERSTAND BECAUSE I WAS THINKING MAYBE YOU WERE
35              SITTING AND THEN YOU WOULD HAVE TO PUT YOUR HEAD
36              UNDER, BUT YOU'RE HAVING TO LAY IN THE WATER WITH
37              YOUR HANDS BEHIND YOUR BACK AND THEN HOW DEEP IS
38              THE WATER? LIKE WHEN, IF YOU LAID FLAT WOULD YOUR
39              HEAD BE UNDER THE WATER?
40
41  MCKLEES:    UH-HUH.
42
43  MILFORD:    SO YOU KIND OF HOLD YOUR HEAD UP TO KEEP IT FROM
            BEING UNDER.

OCT 1 1 2001

0045

INTERVIEW WITH: AUTUMN MCKLEES

PAGE 17

1
2   MCKLEES:   I REALLY COULDN'T.
3
4   MILFORD:   YOU REALLY COULDN'T HOLD IT UP.  SO WHEN YOU WERE
5              LAYING THERE, YOUR HEAD WAS UNDER THE WATER AND
6              HOW LONG WOULD YOUR HEAD BE UNDER THE WATER?
7
8   MCKLEES:   I'M NOT QUITE SURE.
9
10  MILFORD:   LIKE COULD, DID YOU COUNT OR ANYTHING? LIKE HOW
11             MANY MINUTES LIKE YOU COULD COUNT TO 10 WHEN YOUR
12             HEAD WAS UNDER THE WATER OR . . . ?
13
14  MCKLEES:   NO I WAS TRYING TO GET MY HEAD UP.
15
16  MILFORD:   AND HOW DID YOUR HEAD GET UP?
17
18  MCKLEES:   WHEN IT . . . WHEN I WAS DONE MY HEAD WOULD COME UP.
19
20  MILFORD:   OK WHEN YOU WERE DONE YOUR HEAD WOULD COME UP.
21             WHEN YOU WERE DONE WITH WHAT?
22
23  MCKLEES:   WELL AFTER HE KEPT ME UNDER THE WATER FOR A LITTLE
24             BIT, THEN HE'D TAKE MY HEAD UP.
25
26  MILFORD:   SO HE WOULD PULL YOUR HEAD UP?
27
28  MCKLEES:   UH-HUH.
29
30  MILFORD:   OK.  WAS LEE IN THE TUB WITH YOU OR HE WAS OUT OF THE
31             TUB?
32
33  MCKLEES:   HE WAS OUT OF THE TUB.
34
35  MILFORD:   HE WAS OUT OF THE TUB.  SO LIKE HE'D BE SITTING, SAY THIS
36             IS LEE OVER HERE AND YOU'RE LAYING FLAT.  DID YOU JUST
37             GET IN THE TUB AND LAY DOWN ALL BY YOURSELF?
38
39  MCKLEES:   UH-UH.
40
41  MILFORD:   NO.  HOW DID THAT GO?
42
43  MCKLEES:   HE PUT THE HANDCUFFS AROUND MY BACK AND HE TOLD ME
              TO LAY DOWN.

OCT 11 2001

INTERVIEW WITH: AUTUMN MCKLEES

1
2   MILFORD:   SO YOU'D JUST GET IN THE TUB AND YOU'D LAY DOWN AND
3               THEN WOULD YOU GUESS THAT THE WATER LIKE DID IT
4               COVER YOUR WHOLE BODY?
5
6   MCKLEES:   UH-HUH.
7
8   MILFORD:   IT COVERED YOUR WHOLE BODY, OK. AND THEN WHEN HE
9               WAS READY AND YOU'RE NOT SURE HOW LONG THAT WAS,
10              HE WOULD LIFT YOUR HEAD UP. AND WOULD YOU HAVE TO
11              JUST KEEP YOUR HEAD DOWN ONE TIME OR WOULD IT BE
12              MORE THAN ONE TIME? LIKE ONCE HE LIFTED YOUR HEAD
13              UP, WOULD HE SAY OK YOU CAN GET OUT OF THE TUB OR
14              WOULD HE SAY YOU HAVE TO PUT YOUR HEAD DOWN AGAIN.
15
16   MCKLEES:   GET OUT OF THE TUB.
17
18   MILFORD:   GET OUT OF THE TUB, OK. DID AND YOU SAID WAS THAT
19              PUNISHMENT FOR SOMETHING?
20
21   MCKLEES:   NO.
22
23   MILFORD:   NO? WAS IT . . . IF LEE ASKED YOU TO DO SOMETHING AND
24              YOU DID NOT DO THAT, IS THAT WHEN YOU'D HAVE TO GET
25              IN THE TUB?
26
27   MCKLEES:   UH-UH.
28
29   MILFORD:   NO. AFTER YOU WERE IN THE TUB DID LEE ASK YOU TO DO
30              ANYTHING?
31
32   MCKLEES:   UH-UH.
33
34   MILFORD:   BUT IT WAS JUST YOU HAD TO COME IN AND KEEP YOUR
35              HEAD UNDER AND THEN HE WOULD LET YOU UP AND THEN
36              DID YOU GET OUT OF THE TUB?
37
38   MCKLEES:   YES MA'AM.
39
40   MILFORD:   AND THEN YOU JUST GOT DRESSED AND WENT ABOUT YOUR
41              BUSINESS? OK. DID HE EVER SAY WHY HE DID THAT?
42
43   MCKLEES:   UH-UH.

OCT 11 2001

INTERVIEW WITH: AUTUMN MCKLEES

PAGE 19

| | | |
|---|---|---|
| 1<br>2 | MILFORD: | DID HE TALK TO YOU WHILE YOU WERE IN THE TUB? |
| 3<br>4 | MCKLEES: | UH-UH. |
| 5<br>6<br>7<br>8<br>9 | MILFORD: | DID HE EVER SAY ANYTHING LIKE DID HE SAY YOU DID SOMETHING WRONG THAT'S WHY YOU'RE IN HERE OR I'M MAD AT YOU OR . . . NO? DID YOU EVER TELL ANYONE THAT LEE WAS DOING THAT? |
| 10<br>11 | MCKLEES: | I TRIED TO TELL MY MOM. |
| 12<br>13 | MILFORD: | AND WHAT DID SHE SAY? |
| 14<br>15 | MCKLEES: | I DON'T THINK SHE WAS ACTUALLY LISTENING. |
| 16<br>17<br>18<br>19<br>20<br>21<br>23 | MILFORD: | YOU DON'T THINK SHE UNDERSTOOD? SOMETIMES MOMS, I'VE HAD OTHER KIDS SAY THAT. THAT THEY TRIED TO TELL THEIR MOM SOMETHING AND IN THEIR MOM'S MIND THEY'RE NOT REALIZING WHAT A BAD PERSON LEE IS SO THEY MIGHT SAY SOMETHING LIKE WELL IT WAS JUST A _____ YOU KNOW CAUSE THEY DON'T REALLY REALIZE WHAT'S GOING ON. DO YOU REMEMBER WHAT YOU TRIED TO TELL HER? |
| 24<br>25<br>26<br>27 | MCKLEES: | I TRIED TO TELL HER THAT LEE PUT MY HEAD UNDER THE WATER AND I HAD TO STAY THERE FOR A COUPLE OF MINUTES. |
| 28<br>29<br>30 | MILFORD: | AND SHE JUST DIDN'T UNDERSTAND IT. DID YOU EVER TELL HER ABOUT THE HANDCUFFS? |
| 31<br>32 | MCKLEES: | UM, HANDCUFFS, YEAH. I TRIED TO TALK TO HER ABOUT IT. |
| 33<br>34<br>35<br>36<br>37<br>38<br>39 | MILFORD: | OK BUT SHE JUST DIDN'T UNDERSTAND, OK. UM, WELL THAT'S SOUNDS LIKE I WOULD HAVE BEEN REALLY, REALLY SCARED. IF THAT HAPPENED TO ME. I DON'T LIKE BEING UNDER THE WATER WHEN I CAN'T MOVE MY HANDS LIKE THAT SO I WOULD HAVE BEEN REALLY SCARED. WERE YOU, HOW OLD WERE YOU WHEN THAT HAPPENED? |
| 40<br>41 | MCKLEES: | I THINK I WAS STILL FOUR. |
| 42<br>43 | MILFORD: | YOU WERE STILL FOUR. OK. WAS THERE EVER A TIME WHEN YOU WERE IN THE WATER THAT YOU THOUGHT YOU WEREN'T GOING TO BE ABLE TO BREATHE ANYMORE? |

OCT 11 2001

giải

004

INTERVIEW WITH: AUTUMN MCKLEES

PAGE 21

2   UNDERSTOOD YOU AND SHE HAD BELIEVED WHAT WAS
3   HAPPENING AND WHO WAS BEING A BAD GUY.

4   MCKLEES:   SHE COULD HAVE CALLED THE COPS OR UH CALLED MY
5              GRANDPARENTS TO PICK HER UP.
6

7   MILFORD:   YEAH.
8

9   MCKLEES:   CAUSE SHE HAD MANY CHOICES.
10

11  MILFORD:   SHE DID HAVE MANY CHOICES?
12

13  MCKLEES:   MY GRANDPARENTS WOULD LET HER COME UP THERE AND
14             STAY IF SHE WANTED TO.
15

16  MILFORD:   WAS LEE LIKE HER BOYFRIEND OR WAS HE JUST SOMEBODY
17             WHO WAS SHARING THE HOUSE WITH HER?
18

19  MCKLEES:   BOYFRIEND.
20

21  MILFORD:   HE WAS LIKE A BOYFRIEND.

23  MCKLEES:   SHE WAS GOING TO GET MARRIED WITH HIM, BUT SHE LEFT
24             HIM.
25

26  MILFORD:   YEAH. WELL GOOD FOR HER THAT SHE LEFT HIM CAUSE HE
27             SOUNDS LIKE REALLY BAD NEWS. I THINK, I HAVEN'T HEARD
28             ANYTHING GOOD ABOUT LEE FROM ANYBODY. AND I WORRY
29             ABOUT OTHER CHILDREN BECAUSE IF LEE WOULD BE THIS
30             MEAN TO YOU AND TO LILLIAN, I WOULD THINK LEE COULD
31             BE JUST BAD TO ANYBODY. I WOULD THINK MAYBE EVEN
32             ELIZABETH IF HE FELT LIKE IT . . . OR POOKIE. OK WELL TELL
33             ME THIS. I WOULD NEVER HAVE GUESSED AT THIS SO YOU
34             KNOW A LOT OF THINGS. YOU HAVE A LOT OF THINGS IN
35             YOUR HEAD ABOUT WHAT HAPPENED, BUT I DON'T HAVE
36             ANY IDEA ABOUT IT I GUESS. CAN YOU TELL ME ANYTHING
37             ELSE THAT LEE DID THAT WAS SOMETHING DANGEROUS AND
38             SCARY AND NOT VERY NICE TO DO TO YOU?
39

40  MCKLEES:   (MOTIONS)
41

42  MILFORD:   NO, OK. UM . . . LET'S SEE. HOW MANY YEARS . . . YOU'RE IN
43             THE FIRST GRADE, NO YOU'RE IN SECOND GRADE AND
             LILLIAN'S IN FOURTH GRADE SO YOU'RE TWO YEARS APART

OCT 11 2001

INTERVIEW WITH: AUTUMN MCKLEES

1
2    SO WHEN YOU WERE IN KINDERGARTEN, SHE WAS IN SECOND
3    GRADE, RIGHT?

4    MCKLEES:    YES MA'AM.
5

6    MILFORD:    OK. LILLIAN TOLD ME SOME THINGS ABOUT LEE COMING . . .
7                WELL LET ME ASK YOU THIS BEFORE I SAY THAT. WHERE DID
8                YOU SLEEP IN THIS HOUSE IN ALABAMA?
9

10   MCKLEES:    WELL ONE TIME WE HAD ME AND MY SISTER WHEN POOKIE
11               WASN'T BORN, WE HAD BUNK BEDS.
12

13   MILFORD:    UH-HUH.
14

15   MCKLEES:    BUT THEN WHEN POOKIE WAS BORN, SHE STARTED SLEEPING
16               IN THE CRIB, BUT WHEN SHE WAS OLD ENOUGH TO SLEEP IN
17               HER OWN BED, THE PARENTS WENT OUT AND BOUGHT US A
18               BIG BED.
19

20   MILFORD:    A BIG LIKE DOUBLE BED?
21

22   MCKLEES:    ACTUALLY IT'S JUST ONE BED.
23

24   MILFORD:    JUST ONE BED OK. SO YOU HAD BUNK BEDS BEFORE POOKIE
25               AND WHEN SHE WAS IN THE CRIB.
26

27   MCKLEES:    THEN WHEN SHE WAS ABLE TO UH SLEEP ON A BIG BED, SHE
28               CAME INTO MINE AND LILLY'S ROOM.
29

30   MILFORD:    OK SO THEN IT WAS ALL THREE OF YOU IN THE ROOM. SHE
31               WAS OLD ENOUGH TO GET INTO BED. WHEN YOU AND
32               LILLIAN JUST SHARED THE BUNK BEDS, WHICH BUNK DID
33               YOU HAVE? DID YOU HAVE THE TOP BUNK OR THE BOTTOM
34               BUNK?
35

36   MCKLEES:    BOTTOM BUNK.
37

38   MILFORD:    BOTTOM BUNK, OK. WAS THAT ALL THE TIME? OR DID YOU
39               SOMETIMES SWITCH?
40

41   MCKLEES:    WELL IT WAS ALL THE TIME.
42

43   MILFORD:    ALL THE TIME, OK. WHEN I TALKED TO LILLIAN AND I DON'T
             KNOW IF THIS IS SOMETHING YOU FEEL YOU CAN SHARE, BUT

INTERVIEW WITH: AUTUMN MCKLEES

PAGE 23

| | | |
|---|---|---|
| 1 | | SHE TOLD ME THAT SOMETIMES LEE WOULD COME INTO HER |
| 2 | | BEDROOM AT NIGHTTIME WHEN YOUR MOM WAS WORKING |
| 3 | | AND WOULD GET HER TO COME OUT OF THE BEDROOM.  AND |
| 4 | | SHE THOUGHT SOMETIMES THAT HAPPENED TO YOU TOO. |
| 5 | | CAN YOU TELL ME IF YOU REMEMBER ANY OF THAT? |
| 6 | | |
| 7 | MCKLEES: | UH-UH. |
| 8 | | |
| 9 | MILFORD: | YOU DON'T REMEMBER LEE EVER COMING AND TAKING YOU |
| 10 | | OUT OF THE BEDROOM AT NIGHT? |
| 11 | | |
| 12 | MCKLEES: | NO MA'AM. |
| 13 | | |
| 14 | MILFORD: | NO, OK.  AND I DON'T WANT YOU TO TELL ME ANYTHING IF |
| 15 | | YOU DON'T REMEMBER IT OR IF IT DIDN'T REALLY HAPPEN |
| 16 | | CAUSE I WANT US TO BE TALKING JUST ABOUT THE TRUTH. |
| 17 | | UM . . . LET ME ASK YOU THIS BECAUSE YOU'RE IN SECOND |
| 18 | | GRADE.  HAVE YOU EVER SEEN THE PLAY "KNOCK, KNOCK |
| 19 | | WHO'S THERE?"  YOU KNOW WITH SIMON THAT RIDES THE |
| 20 | | SKATEBOARD?  DO YOU NOT KNOW?  (LAUGHS)  THEY BRING |
| 21 | | IT, IT'S CUTE, IT'S A PUPPET SHOW AND THEY BRING IT |
| 23 | | AROUND TO THE SCHOOLS.  I THOUGHT MAYBE YOU WOULD |
| 24 | | HAVE SEEN IT.  IT TALKS TO KIDS ABOUT NOT TALKING TO |
| 25 | | STRANGERS AND UM NOT GIVING OUT YOUR ADDRESS WHEN |
| 26 | | YOU'RE ON THE PHONE AND IT TALKS ABOUT SOME THINGS |
| 27 | | FOR SAFETY AND IN THAT PLAY IS A LITTLE GIRL WHO |
| 28 | | DOESN'T FEEL VERY SAFE AND SHE'S TRYING TO TELL HER |
| 29 | | MOTHER, KIND OF LIKE YOU WERE TRYING TO TELL YOUR |
| 30 | | MOTHER ABOUT THIS, BUT SHE JUST NEVER SEEMS TO BE |
| 31 | | ABLE TO GET HER MOTHER TO STOP AND LISTEN.  JUST KIND |
| 32 | | OF LIKE YOU COULDN'T, AND SO SHE ENDS UP TALKING TO |
| 33 | | HER SCHOOL COUNSELOR, BUT ONE OF THE THINGS IT TALKS |
| 34 | | ABOUT IN THAT PLAY IS GOOD TOUCHING AND BAD |
| 35 | | TOUCHING.  HAS ANYBODY EVER TALKED TO YOU ABOUT |
| 36 | | GOOD TOUCHING AND BAD TOUCHING AND WHERE YOUR |
| 37 | | PRIVATE PLACES ARE? |
| 38 | MCKLEES: | UH-UH. |
| 39 | | |
| 40 | MILFORD: | NO, OK.  WELL LADIES HAVE, GIRLS OR LADIES, HAVE THREE |
| 41 | | PLACES THAT ARE CALLED THEIR PRIVATE PLACES KIND OF |
| 42 | | AND THEY'RE PLACES THAT YOU HAVE A RIGHT TO TELL |
| 43 | | PEOPLE NOT TO TOUCH YOU THERE.  AND ONE OF THOSE |

INTERVIEW WITH: AUTUMN MCKLEES          PAGE 24

```
 2            PLACES IS UP HERE.  I DON'T KNOW WHAT YOU CALL THIS,
 3            BUT WHAT'S YOUR NAME FOR THIS UP HERE?

 4   MCKLEES:  BREASTS.
 5
 6   MILFORD:  BREASTS, OK GOOD.  CAUSE I WANT YOUR NAME SO WE'RE
 7            TALKING ABOUT THE SAME THING.  THOSE ARE YOUR
 8            BREASTS.  AND WHAT DO YOU CALL THIS BACK HERE?
 9
10   MCKLEES:  GLUTEUS MAXIMUS.
11
12   MILFORD:  GLUTEUS MAXIMUS, OK.  AND LADIES HAVE A FRONT
13            PRIVATE WHERE THEY PEE.  DO YOU KNOW WHAT YOU CALL
14            THAT?
15
16   MCKLEES:  PIE.
17
18   MILFORD:  PIE, OK.  THAT'S WHAT LILLIAN'S CALLS THAT TOO.  SHE
19            CALLS HER GLUTEUS MAXIMUS HER BUTT.
20
21   MCKLEES:  (LAUGHS)
22
23   MILFORD:  (LAUGHS) DO YOU CALL IT BUTT SOMETIMES TOO?
24
25   MCKLEES:  SOMETIMES.
26
27   MILFORD:  OK SO THOSE ARE THE THREE AREAS ON A LADY.  MEN HAVE
28            THE TWO, WELL MEN HAVE SOMETHING THAT IS KIND OF IN
29            THE SAME PLACE AS A PIE, BUT IT USUALLY DOESN'T HAVE
30            THE SAME NAME.  DO YOU KNOW WHAT A MAN'S PRIVATE
31            PART IS CALLED?
32
33   MCKLEES:  UH-UH.
34
35   MILFORD:  NO.  HAVE YOU EVER SEEN A MAN'S PRIVATE PART?
36
37   MCKLEES:  I DON'T THINK SO.
38
39   MILFORD:  OK.  WELL THEY HAVE A PRIVATE PART TOO.  IT HAS A
40            DIFFERENT NAME.  BUT THEY ALSO HAVE A BUTT AND
41            PEOPLE DON'T COUNT BREASTS OR CHEST ON A MAN AS
42            THEIR PRIVATE PART CAUSE THEY DON'T GROW LIKE WOMEN
43            DO.  SO IT'S KIND OF DIFFERENT, BUT USUALLY THEY SAY
              IT'S THE PARTS THAT ARE COVERED WHEN YOU WEAR A
```

OCT 11 2001

INTERVIEW WITH: AUTUMN MCKLEES

PAGE 25

1  BATHING SUIT. THOSE ARE ALL YOUR PRIVATE AREAS. AND
2  IF ANYBODY EVER TRIES TO TOUCH YOU THERE OR BOTHER
3  YOU THERE, YOU HAVE THE RIGHT TO SAY NO AND IF
4  ANYONE DOES TOUCH YOU THERE, YOU SHOULD TELL A
5  GROWN-UP. YOU SHOULD TELL SOMEBODY. NOW THAT'S IF
6  A GROWN-UP IS EVER TOUCHING YOU THERE. WHEN YOU
7  GET TO BE A TEENAGER AND YOU HAVE A BOYFRIEND AND IF
8  YOU WANT SOMEONE THAT'S THE SAME AGE AS YOU TO
9  TOUCH YOU THERE, THAT'S KIND OF DIFFERENT, BUT A
10  GROWN-UP SHOULD NEVER BE TOUCHING A CHILD IN THOSE
11  PRIVATE AREAS. SO THAT'S SOMETHING TO REMEMBER.
12  AND I GUESS THE QUESTION THAT I HAVE TO ASK YOU
13  BECAUSE IT'S JUST REAL IMPORTANT IS, HAS ANY GROWN-UP
14  EVER TOUCHED YOU IN ANY THREE OF THOSE AREAS THAT
15  WE TALKED ABOUT, YOUR BREASTS OR YOUR BUTT OR YOUR
16  PIE?
17
18  MCKLEES:  UH-HUH.
19
20  MILFORD:  OK CAN YOU TELL ME WHO HAS TOUCHED YOU THERE?
21
2  MCKLEES:  LEE.
23
24  MILFORD:  LEE OK. THEN I GUESS IF YOU CAN, IF YOU CAN TELL ME A
25  LITTLE BIT MORE ABOUT HOW LEE TOUCHED YOU OR WHERE
26  LEE . . . SOMETIMES . . . DID IT HAPPEN MORE THAN ONE TIME
27  THAT LEE TOUCHED YOU THERE?
28
29  MCKLEES:  (MOTIONS)
30
31  MILFORD:  SOMETIMES IT'S EASIEST IF WE TALK ABOUT . . .
32
33  MCKLEES:  WELL ACTUALLY ON THE BUTT, MY GLUTEUS MAXIMUS.
34
35  MILFORD:  YOUR GLUTEUS MAXIMUS, YOUR BUTT. OK. CAN YOU TELL
36  ME THE FIRST TIME YOU REMEMBER LEE TOUCHING YOUR
37  BUTT AND CAN YOU TELL ME ABOUT THAT. SOMETIMES IF
38  WE TALK ABOUT THE FIRST TIME AND THE LAST TIME THEN
39  IT HELPS US JUST DESCRIBE SOMETHING. SO WHAT DO YOU
40  REMEMBER ABOUT HOW OLD WERE YOU THE FIRST TIME LEE
41  TOUCHED YOUR BUTT?
42
43  MCKLEES:  I THINK I WAS FIVE.
4

OCT 11 2001

0054

INTERVIEW WITH: AUTUMN MCKLEES                    PAGE 26

1  MILFORD:    YOU WERE FIVE, OK SO THAT WOULD HAVE BEEN THE YEAR
2              YOU WERE IN KINDERGARTEN.
3
4  MCKLEES:    UH-HUH.
5
6  MILFORD:    AND WHAT HAPPENED, HOW DO YOU REMEMBER THAT LEE
7              TOUCHED YOUR BUTT?
8
9  MCKLEES:    IT WAS SUPPOSED TO ALWAYS BE A SECRET.
10
11 MILFORD:    IT WAS SUPPOSED TO ALWAYS BE A SECRET, RIGHT. AND
12             THAT'S EXACTLY WHAT LILLIAN SAID. AND SO I SAID TO
13             LILLIAN YESTERDAY IF SHE WANTED TO GO HOME AND IF
14             SHE WANTED TO TELL YOU THAT SHE HAD SHARED THAT
15             SECRET WITH SOMEBODY, UM THAT IT WOULD BE OK. SHE
16             COULD TELL YOU THAT SHE HAD TALKED TO ME ABOUT
17             THAT AND JUST TO LET YOU KNOW, BUT AND I DON'T KNOW,
18             MAYBE SHE GOT TO THINKING ABOUT IT LAST NIGHT AND
19             SHE DIDN'T WANT TO TELL YOU. BUT I TOLD HER THAT I WAS
20             GOING TO TRY TO COME SEE YOU BECAUSE SHE DID SAY IT
21             WAS A SECRET, BUT SHE ALSO SAID THAT SHE WAS THINKING
22             ABOUT IT A LOT AND SHE JUST COULDN'T KEEP IT A SECRET
23             ANYMORE. SHE WAS TIRED OF KEEPING A SECRET. AND DO
24             YOU KNOW WHAT? I UNDERSTAND THAT IT WAS A SECRET,
25             BUT REALLY IT'S A SECRET THAT IT'S OK TO TELL BECAUSE
26             YOU DIDN'T DO ANYTHING WRONG AND LEE DID. AND WE
27             NEED TO BE ABLE TO MAKE SURE THAT HE DOESN'T DO THE
28             SAME KIND OF SAD THINGS TO ANOTHER CHILD AND WHAT
29             MADE YOU THINK IT WAS A SECRET?
30
31 MCKLEES:    WELL IT NEVER DID . . . I . . . I KNEW THAT IT WAS A SECRET.
32
33 MILFORD:    YOU ALWAYS THOUGHT IT WAS A SECRET. WHO DECIDED TO
34             KEEP IT A SECRET?
35
36 MCKLEES:    LEE.
37
38 MILFORD:    LEE? OK. AND IS THAT WHAT LEE CALLED IT? HE SAID IT
39             WAS A SECRET? RIGHT AND YOU KNOW WHAT? SOMETIMES
40             GROWN-UPS WHEN THEY KNOW THEY'RE DOING SOMETHING
41             WRONG, THAT'S EXACTLY WHAT THEY SAY. THEY SAY THIS
42             IS A SECRET SO YOU WON'T TELL ANYBODY AND NO ONE
43             WILL KNOW THAT THEY ARE DOING SOMETHING WRONG,
44             BUT IT'S UP TO YOU WHETHER YOU WANT TO TALK ABOUT

OCT 11 2001

INTERVIEW WITH: AUTUMN MCKLEES                    PAGE 27

| | |
|---|---|
| 1 | THIS MORE OR NOT, BUT I REALLY WISH YOU WOULD |
| 2 | BECAUSE I DON'T THINK IT'S A SECRET YOU SHOULD HAVE |
| 3 | TO KEEP ALL TO YOURSELF ANYMORE. I THINK THERE ARE |
| 4 | PEOPLE THAT CAN HELP YOU AND I THINK LEE WAS VERY |
| 5 | WRONG TO TELL YOU THIS WAS A SECRET. AND HE WAS |
| 6 | VERY WRONG TO DO SOME OF THE THINGS HE DID. AND |
| 7 | YOU'RE JUST A LITTLE GIRL AND YOU WERE EVEN SMALLER |
| 8 | WHEN YOU WERE FIVE AND THAT JUST WASN'T A VERY NICE |
| 9 | THING FOR HIM TO DO TO YOU. IT WAS A VERY WRONG AND |
| 10 | BAD THING. THAT'S THE WAY I SEE IT. AND I THINK |
| 11 | SOMEBODY NEEDS TO MAKE SURE LEE DOESN'T HURT |
| 12 | ANOTHER CHILD. SO . . . DO YOU THINK THAT . . . IF YOU'RE |
| 13 | WILLING TO TALK ABOUT IT TODAY, I WOULD LIKE TO TALK |
| 14 | ABOUT IT. IF YOU DON'T BELIEVE THAT LILLIAN TALKED TO |
| 15 | ME ABOUT IT, IF YOU WANT TO WAIT AND GO HOME AND |
| 16 | TALK TO LILLIAN. I CAN COME BACK ANOTHER DAY, YOU |
| 17 | KNOW, I JUST, I CAN TELL YOU THAT LILLIAN TALKED TO ME |
| 18 | ABOUT IT, BUT YOU DON'T KNOW ME AT ALL SO THERE'S NO |
| 19 | REASON YOU SHOULD BELIEVE ME (LAUGHS), YOU KNOW. |
| 20 | I'M TELLING YOU THE TRUTH, BUT YOU DON'T KNOW THAT |
| 21 | AND SO IT'S UP TO YOU. BUT WE'VE COME PRETTY FAR, |
| 22 | YOU'VE TOLD ME SOME THINGS THAT LEE HAS DONE THAT |
| 23 | REALLY HE SHOULDN'T HAVE DONE AND IF YOU CAN TELL |
| 24 | ME A LITTLE BIT MORE ABOUT THAT TOUCHING UM I GUESS |
| 25 | I'D LIKE TO HEAR WHAT YOU HAVE TO SAY. DO YOU FEEL |
| 26 | LIKE YOU CAN TALK ABOUT IT? I DON'T WANT YOU TO DO |
| 27 | ANYTHING YOU DON'T WANT TO DO. DO YOU THINK YOU |
| 28 | SHOULD KEEP THE SECRET STILL OR? |
| 29 | |
| 30 | MCKLEES:   (MOTIONS) |
| 31 | |
| 32 | MILFORD:   NO. TELL ME ABOUT THAT FIRST TIME WHEN YOU WERE FIVE |
| 33 | AND WHEN LEE TOUCHED YOUR BUTT. |
| 34 | |
| 35 | MCKLEES:   WELL . . . |
| 36 | |
| 37 | MILFORD:   WHAT DO YOU REMEMBER? I BET IT'S PRETTY BIG IN YOUR |
| 38 | MEMORY. I BET THAT'S A PRETTY HARD THING TO FORGET. |
| 39 | |
| 40 | MCKLEES:   GO BACK TO THE OTHER PAGE. |
| 41 | |
| 42 | MILFORD:   GO BACK TO THIS OTHER PAGE. (PAPERS SHUFFLING) MY |
| 43 | WRITING, JUST TAKING SOME NOTES. |

OCT 1 1 2001

INTERVIEW WITH: AUTUMN MCKLEES

PAGE 28

1  MCKLEES:  WHAT'S THAT?
2
3  MILFORD:  BUT ... THIS IS A BREAST THIS SAYS GLUTEUS MAXIMUS,
4            BUTT, AND THAT SAYS PIE.
5
6  MCKLEES:  HE TOOK SOMETHING LIKE A PIE AND HE WOULD ME AND
7            LILLY HE WOULD STICK IT UP OUR BUTT.
8
9  MILFORD:  HE TOOK SOMETHING LIKE A PIE AND STICKED IT UP YOUR
10           BUTT? WHAT WAS THE THING THAT WAS LIKE YOUR PIE?
11
12 MCKLEES:  I DON'T KNOW WHAT IT WAS CALLED.
13
14 MILFORD:  YOU DON'T KNOW WHAT IT WAS CALLED. WHERE WAS IT?
15
16 MCKLEES:  DOWN BY MY PIE.
17
18 MILFORD:  DOWN BY YOUR PIE. WAS IT, WAS IT PART OF LEE'S BODY?
19
20 MCKLEES:  YES.
21
?. MILFORD:  IT WAS PART OF LEE'S BODY. COULD YOU DRAW ME A
-3           PICTURE ABOUT WHAT THAT LOOKED LIKE.
24
25 MCKLEES:  I THINK I COULD.
26
27 MILFORD:  CAN YOU REMEMBER? HERE YOU CAN DRAW THERE. OK.
28           ON, CAN YOU DRAW ME ONE MORE PICTURE AND SHOW ME
29           WHERE ... THAT'S A VERY GOOD PICTURE. I THINK I KNOW
30           WHAT YOU MEAN. CAN YOU SHOW ME WHERE THAT WOULD
31           BE ON LEE'S BODY? CAN YOU DRAW A STICK FIGURE OF LEE
32           AND SHOW ME WHERE THAT PART WOULD BE? (PAUSE) OK
33           AND THAT'S THE PART RIGHT THERE. VERY GOOD. AND
34           THAT IS A MAN'S PRIVATE PART. THERE ARE SOME
35           DIFFERENT NAMES FOR THAT AND I DON'T KNOW WHAT
36           NAME YOUR MOM WOULD WANT YOU TO USE TO CALL THAT,
37           BUT YOU ARE SAYING HE WOULD STICK THAT IN YOUR BUTT,
38           NOT IN YOUR FRONT PRIVATE?
39
40 MCKLEES:  UH-HUH.
41
42 MILFORD:  NOW YOU JUST SAID HE DID THAT WITH LILLIAN TOO. HOW
43           DO YOU KNOW THAT? CAUSE LILLIAN TOLD ME THAT TOO.
            BUT I WONDER HOW YOU KNOW.

OCT 11 2001

| | | |
|---|---|---|
| 1 | | |
| 2 | MCKLEES: | BECAUSE WHENEVER HE TOOK SOMEONE OUT OF THE ROOM |
| 3 | | HE WOULD MOSTLY TAKE THEM IN THE BEDROOM AND HE'D |
| 4 | | SHUT THE DOOR. |
| 5 | | |
| 6 | MILFORD: | OK GO INTO WHOSE BEDROOM? |
| 7 | | |
| 8 | MCKLEES: | HIS. |
| 9 | | |
| 10 | MILFORD: | HIS BEDROOM OK. AND WHEN DID YOU AND LILLIAN DECIDE |
| 11 | | TO TALK ABOUT IT WITH EACH OTHER. |
| 12 | | |
| 13 | MCKLEES: | I CAN'T REMEMBER. |
| 14 | | |
| 15 | MILFORD: | OK SO YOU WOULD SEE HER GO OUT OF THE ROOM |
| 16 | | SOMETIMES. WHO WENT OUT OF THE ROOM FIRST, DO YOU |
| 17 | | REMEMBER? |
| 18 | | |
| 19 | MCKLEES: | I THINK IT WAS LILLY. |
| 20 | | |
| 21 | MILFORD: | THINK IT WAS LILLY. OK AND THEN SOMETIMES IT WOULD |
| | | BE YOU THAT WOULD GO OUT OF THE ROOM? OK. CAN . . . |
| 23 | | ANY TIME THAT LEE EVER TOOK YOU OUT OF THE ROOM WAS |
| 24 | | IT ALWAYS THAT HE PUT HIS PIE OR HIS PRIVATE THAT'S |
| 25 | | LIKE HIS PIE IN YOUR BUTT, DID HE EVER PUT IT ANYWHERE |
| 26 | | ELSE? |
| 27 | | |
| 28 | MCKLEES: | UH-UH. |
| 29 | | |
| 30 | MILFORD: | DID HE EVER ASK YOU TO DO ANYTHING TO HIM? |
| 31 | | |
| 32 | MCKLEES: | UH-UH. |
| 33 | | |
| 34 | MILFORD: | DID HE EVER ASK YOU TO TOUCH HIM IN ANY WAY OR TO |
| 35 | | TOUCH HIS PIE? |
| 36 | | |
| 37 | MCKLEES: | UH-UH. |
| 38 | | |
| 39 | MILFORD: | NO, OK. HOW MANY TIMES WOULD YOU GUESS THAT THAT |
| 40 | | HAPPENED? THAT HE TOOK YOU OUT OF THE ROOM AND |
| 41 | | STUCK HIS PIE IN YOUR BUTT. |
| 42 | | |
| 43 | MCKLEES: | EVERY DAY. |

OCT 1 1 2001

INTERVIEW WITH: AUTUMN MCKLEES                    PAGE 30

| | | |
|---|---|---|
| 1 | MILFORD: | EVERY DAY. OK. LILLY TOLD ME ONE TIME THAT YOU WERE |
| 2 | | HURT. THAT YOU WERE BLEEDING AND YOU WERE HURT |
| 3 | | FROM YOUR PIE AND THAT SHE THOUGHT THAT WAS FROM |
| 4 | | SOMETHING LEE DID, BUT THE SCHOOL SAID YOU HAD |
| 5 | | GOTTEN HURT AT SCHOOL OR SOMETHING AND SHE WAS |
| 6 | | NEVER SURE WHICH THING WAS TRUE. SHE THOUGHT |
| 7 | | MAYBE LEE HAD HURT YOU AND NOT WHAT HAPPENED AT |
| 8 | | SCHOOL . . . |

10   (SIDE B)

12   MILFORD:    DID YOU FALL ON A BALANCE BEAM AT SCHOOL?

14   MCKLEES:    UH-UH.

16   MILFORD:    YOU NEVER FELL ON A BALANCE BEAM AT SCHOOL. OK CAN
17                    YOU TELL ME, DO YOU KNOW WHY YOU WERE BLEEDING?

19   MCKLEES:    WHEN HE UM, WHEN HE WAS TRYING UM, WHEN HE PUT HIS
20                    PRIVATE PART IN MY UM BUTT THAT'S WHEN HE
21                    ACCIDENTALLY PUT IT IN MY PIE.

23   MILFORD:    OK.

25   MCKLEES:    HE DIDN'T MEAN TO THOUGH.

27   MILFORD:    HE DIDN'T MEAN TO, HOW DO YOU KNOW THAT?

29   MCKLEES:    CAUSE IT ACCIDENTALLY SLIPPED.

31   MILFORD:    OK. AND THAT'S WHY YOU WERE BLEEDING THAT DAY? AND
32                    DID YOU GO TO THE DOCTOR THAT DAY OR ONE OF THOSE
33                    COUPLE OF DAYS?

35   MCKLEES:    UH-UH.

37   MILFORD:    YOU DIDN'T GO TO THE DOCTOR? CAUSE LILLIAN THOUGHT
38                    YOU HAD SEEN A DOCTOR SOMEWHERE. YOU DON'T
39                    REMEMBER GOING TO THE DOCTOR? NO OK. DID YOU TELL
40                    LILLIAN THAT IT WAS LEE, NOT THE BALANCE BEAM?

42   MCKLEES:    UH-UH.
43

OCT 11 2001

INTERVIEW WITH: AUTUMN MCKLEES                           PAGE 31

1   MILFORD:    NO, SHE JUST GUESSED THAT? OK. WHY DID THE SCHOOL
2               THINK IT WAS THE BALANCE BEAM?
3
4   MCKLEES:    THE SCHOOL DIDN'T.
5
6   MILFORD:    DIDN'T THINK THAT? NO. OK. DID LEE THINK THAT HE WAS
7               GOING TO BE IN TROUBLE?
8
9   MCKLEES:    I DON'T THINK HE DID.
10
11  MILFORD:    SO, MOST TIMES AND I KNOW SCHOOL'S GOING TO BE OUT
12              AND I DON'T WANT TO KEEP YOU. I DON'T WANT YOU TO
13              MISS YOUR BUS OR ANYTHING. WHEN LEE PUT HIS PRIVATE
14              IN YOUR BUTT, YOU WERE IN HIS BEDROOM MOST OF THE
15              TIME?
16
17  MCKLEES:    UH-HUH.
18
19  MILFORD:    CAN YOU TELL ME WHERE YOU ARE IN THE BEDROOM?
20
21  MCKLEES:    ON THE BED.
22
23  MILFORD:    ON THE BED. AND HOW WERE YOU LAYING? OR WERE YOU
24              LAYING?
25
26  MCKLEES:    UM, PRETEND LIKE THAT'S THE PILLOW. MY FACE WOULD BE
27              ON THE PILLOW.
28
29  MILFORD:    YOUR FACE WOULD BE ON THE PILLOW OK SO HE WAS
30              BEHIND YOU. DID HE EVER TURN YOU OVER THAT YOU WERE
31              ON YOUR BACK AND YOU WERE LOOKING UP AT THE
32              CEILING?
33
34  MCKLEES:    NOPE.
35
36  MILFORD:    NO, IT WAS ALWAYS THE OTHER WAY AND ONE TIME IT
37              SLIPPED AND THAT'S HOW YOU GOT HURT. DID LEE EVER
38              SAY ANYTHING TO YOU WHEN HE WAS DOING THAT TO YOU?
39
40  MCKLEES:    UH-UH.
41
42  MILFORD:    NO, HE DIDN'T SAY ANYTHING. DID HE EVER, I'M
43              WONDERING ABOUT THE TIME IN THE TUB. DID HE EVER SAY
                TO YOU, IF YOU DON'T COME INTO BED WITH ME I'M GOING

OCT 11 2001

INTERVIEW WITH: AUTUMN MCKLEES

1
2
3          TO PUT YOU IN THE TUB? WAS THAT EVER ANYTHING HE
           USED TO LIKE SCARE YOU OR THREATEN YOU?

4   MCKLEES:   UH-UH.
5

6   MILFORD:   NO, THAT WAS JUST A WHOLE SEPARATE THING. OK. DID
7              YOU EVER TELL ANYONE BESIDES LILLY ABOUT LEE'S
8              PRIVATE GOING IN YOUR BUTT?
9

10  MCKLEES:   (MOTIONS)
11

12  MILFORD:   NO, OK. IN YOUR WHOLE LIFE UP UNTIL NOW, HAS THERE
13             BEEN ANYBODY OTHER THAN LEE THAT EVER TOUCHED
14             YOUR PRIVATE AREAS?
15

16  MCKLEES:   (MOTIONS)
17

18  MILFORD:   JUST LEE, OK. IS THERE ANYTHING ELSE THAT YOU CAN
19             THINK ABOUT THAT LEE DID THAT WOULD BE IMPORTANT
20             FOR ME TO KNOW, TO HELP UNDERSTAND ALL THE BAD
21             THINGS HE DID?
22

23  MCKLEES:   IT'S MOSTLY ONLY THOSE THINGS.
24

25  MILFORD:   OK. WELL AND I UNDERSTAND YOU THOUGHT IT WAS GOOD
26             TO KEEP THE SECRET, BUT NOW I THINK IT'S TIME FOR YOU
27             TO BE OK ABOUT TALKING ABOUT IT. I WANT . . . YOUR MOM
28             DOESN'T KNOW EVERYTHING THAT'S HAPPENED TO YOU,
29             BUT SHE KIND OF DOES KNOW WHAT'S HAPPENED TO LILLY
30             CAUSE LILLY TALKED TO HER YESTERDAY. SO YOUR MOM
31             WON'T BE SURPRISED IF YOU TELL HER THAT YOU HAD A
32             SECRET WITH LEE AND HE DID SOME THINGS HE SHOULDN'T
33             DO TO YOU. SHE WILL UNDERSTAND THAT. SHE WON'T BE
34             SURPRISED SO IT'S OK IF YOU WANT TO TALK TO YOUR MOM
35             ABOUT IT OR YOU WANT TO TALK TO LILLY ABOUT IT. AND
36             I'M PROBABLY GOING TO RECOMMEND TO YOUR MOM THAT
37             YOU HAVE A COUNSELOR, THAT YOU GO TO SOMEBODY AND
38             YOU TALK ABOUT EVERYTHING THAT'S HAPPENED SO YOU
39             CAN GET SOME OF YOUR FEELINGS OUT ABOUT IT OK.
40             ALRIGHT. AND I'M GOING TO TRY TO MAKE SURE THAT LEE,
41             THAT YOU DON'T EVER HAVE TO SEE LEE AGAIN YOUR
42             WHOLE LIFE AND THAT WE'LL MAKE SURE LEE DOESN'T DO
43             THIS TO ANYBODY ELSE. I CAN GO, I CAN GO TO THE COURT
               HERE AND I CAN SAY LEE HAS DONE SOME BAD THINGS AND

OCT 11 2001

INTERVIEW WITH: AUTUMN MCKLEES

PAGE 33

| | | |
|---|---|---|
| 1 | | HE IS NOT TO EVER, EVER, EVER CONTACT YOU. NOT TO SEE |
| 2 | | YOU, NOT TO CALL YOU, NOT TO WRITE YOU, NOT TO DO ANY |
| 3 | | OF THOSE THINGS CAUSE I DON'T THINK HE'S A VERY SAFE |
| 4 | | PERSON FOR YOU TO BE WITH. OK WOULD THAT BE OK TO |
| 5 | | DO? |
| 6 | | |
| 7 | MCKLEES: | (MOTIONS) |
| 8 | | |
| 9 | MILFORD: | OK AND I'M SURE THAT YOUR MOM WON'T LET YOU SEE HIM |
| 10 | | ANYTIME SOON. |
| 11 | | |
| 12 | MCKLEES: | WE'RE NOT ALLOWED TO. |
| 13 | | |
| 14 | MILFORD: | YEAH. |
| 15 | | |
| 16 | MCKLEES: | SO HE'S NOW PRETTY BETTER. |
| 17 | | |
| 18 | MILFORD: | I DOUBT THAT, TO TELL YOU THE TRUTH, BUT WE'LL SEE. |
| 19 | | PEOPLE NEED TO GET A LOT OF HELP BEFORE THEY GET |
| 20 | | BETTER. THESE THINGS THAT HE DID WERE REALLY WRONG |
| 21 | | THINGS TO DO AND I WANT YOU TO REMEMBER IF YOU CAN |
| 22 | | REMEMBER THIS, IF EVER AGAIN SOMEONE YOU DON'T WANT |
| 23 | | TO TOUCH YOU OR BOTHER YOU EVER TOUCHES YOU, IT'S OK |
| 24 | | TO TELL AND IT SHOULD NOT BE A SECRET AND YOU CAN |
| 25 | | TELL ANYBODY YOU WANT TO. YOU CAN TELL YOUR |
| 26 | | TEACHER OR YOU CAN TELL YOUR COUNSELOR OR YOU CAN |
| 27 | | TELL YOUR MOTHER, OR YOU CAN TELL YOUR |
| 28 | | GRANDMOTHER. AND IT'S OK TO TELL RIGHT AWAY AND NO |
| 29 | | ONE SHOULD SCARE YOU AND SAY THAT IT'S NOT OK. |
| 30 | | ALRIGHT? THAT'S THE ONE THING I WANT YOU TO |
| 31 | | REMEMBER FOR SURE. BECAUSE LEE WAS WRONG AND HE |
| 32 | | WAS NOT A GOOD MAN. IF HE'S CHANGED, THAT'S NICE, BUT |
| 33 | | YOU KNOW IT'S HARD FOR PEOPLE TO CHANGE WHEN THEY |
| 34 | | START DOING THINGS THIS BAD. WELL I'M GOING TO BE |
| 35 | | TALKING TO YOUR MOM AND TO YOUR SISTER AGAIN |
| 36 | | PROBABLY AND MAYBE EVEN WITH LITTLE ELIZABETH, BUT |
| 37 | | AS FAR AS YOU KNOW, YOU DON'T THINK ANYTHING EVER |
| 38 | | HURT ELIZABETH? DID LEE EVER SLEEP WITH ELIZABETH IN |
| 39 | | HIS ROOM? |
| 40 | | |
| 41 | MCKLEES: | NO. |
| 42 | | |
| 43 | MILFORD: | NO, OK. |

OCT 11 2001

| | | |
|---|---|---|
| 1 | MCKLEES: | THE ONLY TIME HE SLEPT WITH ELIZABETH WAS WHEN |
| 2 | | POOKIE WAS BORN AND IT WAS BEDTIME AND MOM WAS |
| 3 | | THERE. |
| 4 | | |
| 5 | MILFORD: | OK BUT WHEN LEE TOOK YOU INTO HIS BEDROOM, WHERE |
| 6 | | WAS YOUR MOM? |
| 7 | | |
| 8 | MCKLEES: | AT WORK. |
| 9 | | |
| 10 | MILFORD: | AT WORK. AND WHERE DID SHE WORK THEN? DO YOU |
| 11 | | REMEMBER? |
| 12 | | |
| 13 | MCKLEES: | I THINK IT WAS THE SAME PLACE BUT I CAN'T REMEMBER |
| 14 | | THE NAME OF THE PLACE. |
| 15 | | |
| 16 | MILFORD: | AND WHEN YOU SAY HE CAME INTO YOUR ROOM AND TOOK |
| 17 | | YOU OUT, WOULD THAT BE LIKE RIGHT AFTER YOU WENT TO |
| 18 | | BED AT LIKE 8:00 AT NIGHT, OR WOULD THAT BE LIKE |
| 19 | | MIDNIGHT OR WOULD THAT BE EARLY IN THE MORNING? |
| 20 | | |
| 21 | MCKLEES: | ACTUALLY THAT NEVER HAPPENED TO ME, THAT HAPPENED |
| 22 | | TO LILLY. |
| 23 | | |
| 24 | MILFORD: | OK. WELL WHEN DID HE COME AND GET YOU AND PUT YOU |
| 25 | | IN HIS BED? |
| 26 | | |
| 27 | MCKLEES: | DURING THE DAYTIME. |
| 28 | | |
| 29 | MILFORD: | DURING THE DAYTIME. AND YOUR MOM WAS AT WORK IN |
| 30 | | THE DAYTIME. AND WHERE WAS LILLY? |
| 31 | | |
| 32 | MCKLEES: | LILLY WOULD BE EITHER DOING HER HOMEWORK OR DOING |
| 33 | | THE CHORES. |
| 34 | | |
| 35 | MILFORD: | OK SO THAT WAS IN THE DAYTIME WHEN YOUR MOM WAS AT |
| 36 | | WORK. OK. WOW YOU'VE ANSWERED A LOT OF QUESTIONS. |
| 37 | | I REALLY APPRECIATE YOU TALKING TO ME. DO YOU HAVE |
| 38 | | ANY QUESTIONS TO ASK ME? I KNOW WE DON'T HAVE A LOT |
| 39 | | OF TIME BUT I COULD ALWAYS COME BACK IF I HAD TO. NO |
| 40 | | PROBLEM. NO? OK. WELL YOU KEEP THAT AND IF YOU NEED |
| 41 | | TO TALK TO ME, YOU SHOW IT TO YOUR TEACHER AND YOU |
| 42 | | TELL HER TO CALL ME, YOU WANT TO TALK TO ME, OK? BUT |
| 43 | | I MIGHT BE OUT TO TALK TO YOU AGAIN ONE TIME ANYWAY |

OCT 11 2001

0063

INTERVIEW WITH: AUTUMN MCKLEES

| | | |
|---|---|---|
| 1 | | JUST TO CATCH UP AND MAKE SURE EVERYTHING'S OK. |
| 2 | | ALRIGHT? |
| 3 | | |
| 4 | MCKLEES: | YES MA'AM. |
| 5 | | |
| 6 | MILFORD: | THANK YOU AUTUMN, THANK YOU VERY MUCH. |
| 7 | | |
| 8 | MCKLEES: | WHICH ONE IS YOUR PHONE NUMBER? |
| 9 | | |
| 10 | MILFORD: | YOU KNOW WHAT, IT'S THIS TOP ONE. THIS IS THE FAX. THAT |
| 11 | | SAYS FAX, THIS SAYS MACHINE. BUT THIS IS THE NUMBER |
| 12 | | YOU WOULD CALL. IT'S 382-2276. AND WHEN I'M NOT THERE, |
| 13 | | YOU'LL HEAR MY VOICE, IT SAYS LEAVE ME A MESSAGE. OK? |
| 14 | | OK. THANKS AUTUMN. |
| 15 | | |
| 16 | DM/kb | |
| 17 | (Typing Completed: 04/02/01) | |

OCT 11 2001

0064



DORIE MILFORD DREW
BATH-TUB + SPIGOT —

CHILD (AUTUMN) DREW
WHERE HER BODY WAS
A X IS WHERE LEE
WAS BESIDE THE
TUB,
CHILD IS "LAYING
ON MY TUMMY".



MAN'S
PICTURE OF PRIVATE

LEE'S BODY
WITH
PRIVATE
PART

DRAWN BY AUTUMN McLEES
3/30/2001

OCT 11 2001

Exhibit "C"

0065

DATE:      06/25/01
VICTIM:    Lillian Judith McLees
SUBJECT:   Forensic Interview

On 06/25/01, at approximately 1:00 p.m., I met with Lillian McLees, her mother, Dawn Beheshtzaden, her step-maternal grandmother, Princess Hepner, Lee Co. DHR social worker, Yarbi Cound, and Opelika Police Department Det. Shane Healey at the Child Advocacy Center in reference to a sexual abuse report. The report concerned Lillian disclosing that William Lee Kirby, her mother's ex live-in boyfriend, had touched her private parts. The incident occurred approximately two years ago when the family was living in Opelika. The family has moved to Virginia.

Lillian is 10 years old and just completed the 4th grade at Butts Road Intermediate School. Her teacher was Mr. Birkie. I asked Lillian about her favorite subject. Lillian said she liked math the best and didn't like English and reading. I asked Lillian who all she lives with. Lillian said she lives with her grandparents, Princess and Robert Hepner, her sisters, Autumn and Elizabeth, and her cousins, Robbie and Carlton. Lillian said her mom and step-dad live in Chesapeake but they visit each other a lot. I asked Lillian if she knew why she had been brought to the center to talk to me. Lillian said it was about the bad things Lee Kirby did to her. I told Lillian that was what we would be talking about. I then explained the rules to Lillian as follows: you know more than I about what happened; always tell the truth; no guessing; if you don't know or don't remember, say so; if I repeat a question, it doesn't mean your first answer was wrong; and, you can correct me if I get something wrong. Lillian said she understood and would follow the rules. I told Lillian to tell me everything she could remember about what happened. Lillian said Lee hurt her and touched her in ways she didn't like. Lillian said it didn't feel right when he touched her. I asked Lillian where Lee touched her. Lillian said he touched her private parts, her pie and her butt. Lillian said her pie was her front private part and her butt was her back private part. I asked Lillian where this happened. Lillian said it happened at their trailer when they were all living in Opelika. Lillian said it happened in the living room and in her mom's bedroom. I asked Lillian if her clothes were on or off. Lillian said Lee told her to take her clothes off. Lillian said she took all her clothes off. I asked Lillian if anything happened to Lee's clothes. Lillian said Lee took all his clothes off and then touched her privates with his hands and his private part. I asked Lillian if she had name for Lee's private part and she said it was his penis. Lillian said Lee put his penis inside her butt and inside her pie. I asked Lillian if Lee did anything else with his penis. Lillian said Lee put his penis inside her mouth. I asked Lillian what his penis felt like. Lillian said it was hard and felt awful. I asked Lillian if she felt anything come out of Lee's penis when it was inside her mouth. Lillian said something came out and it was white but she didn't know what it was. I asked Lillian who all was at home when this happened. Lillian said her sisters, Autumn and Elizabeth, were there and her mother would be at work. I asked Lillian if Lee put his penis inside her butt one time, two times, or a bunch of times and she said that happened a bunch of times. I asked Lillian if Lee put his penis inside her pie one time, two times, or a bunch of times and she said it happened a bunch of times. I asked Lillian if Lee put his penis inside her mouth one time, two times, or a bunch of times and she said a bunch of times. Lillian said after he touched her that way, he would

OCT 1 1 2001

0066

put her in the bathtub and bath her. I asked Lillian if Lee did anything to her when she was in the bathtub. Lillian said sometimes Lee would hold her head under the water and it would scare her. Lillian said Lee would spank her and Autumn and leave bruises on them for days. I asked Lillian if Lee ever said anything to her when he was touching her in these ways and she said no, not that she could remember. I asked Lillian if she ever told anyone about this. Lillian said she remembered talking to Autumn about it. Lillian said she never told anyone until a while long ago. Lillian said she told her best friend, Jackie Newman, and then her counselor in Virginia. I asked Lillian what grade she was in when Lee did these things to her. Lillian said she was in the 2nd grade. Lillian said she went to a school in Opelika but she couldn't remember the name of the schoo. I asked Lillian if there was anything else she could remember and she said no. I thanked Lillian for talking to me and ended the interview.

Interview Began: 2:00 p.m.
Interview Ended: 2:40 p.m.

*Brenda Moss*
Brenda Moss
Forensic Interviewer
Child Advocacy Center of East Al., Inc.

OCT 11 2001

Exhibit "D"

DATE    : 06/25/01                                                    0067
VICTIM  : Autumn McLees
SUBJECT: Forensic Interview

On 06/25/01, at approximately 1:00 p.m., I met with Autumn McLees, her mother, Dawn Beheshtzaden, her step-maternal grandmother, Princess Hepner, Lee Co. DHR social worker, Yarbi Cound, and Opelika Police Department Det. Shane Healey at the Child Advocacy Center in reference to a sexual abuse report. The report concerned Autumn disclosing that Lee Kirby, her mother's ex live-in boyfriend, had touched her private parts. The incident occurred approximately two years ago when the family was living in Opelika. The family has moved to Virginia.

Autumn is 8 years old and just completed the second grade. Autumn said she went to school at Butts Road Primary School in Chesapeake, Virginia. Autumn said she had two teachers, Ms. Johnson and Ms. Ranefelt. I asked Autumn her favorite subject in school. Autumn said she liked art the best. I asked Autumn if there was anything she didn't like about school. Autumn said she liked everything about school. I asked Autumn who all she lives with. Autumn said she lives with her grandma, her Papa, her mom, two sisters, Lillian and Elizabeth, and her two cousins, Robbie and Carlton. I asked Autumn if she knew why she had been brought to the center to talk to me. Autumn said it was about some bad things Lee did to her when they lived in Opelika. I told Autumn that was what we would be talking about. I then told Autumn that we would only talk about things that had really happened and not pretend things. I used several examples in explaining truth and lies and Autumn responded appropriately and said she would tell the truth. I asked Autumn who Lee was. Autumn said Lee lived with them when they lived in Opelika and he was her mom's boyfriend. I told Autumn to tell me everything she could remember about what happened. Autumn said that Lee did some bad things to her and her sister, Lillian. Autumn said that Lee choked her until she passed out. I told Autumn to tell me more about that. Autumn said she couldn't remember why Lee did that or anything else about it. Autumn said a friend of her mother's had given her mother a pair of handcuffs for a birthday or Christmas present. Autumn said Lee put the handcuffs on her hands behind her back and then he would dunk her in the water in the bathtub. Autumn said Lee would hold her head under the water in the bathtub. Autumn said Lee did that to Lillian but most of the time he just did it to her. Autumn said Lee would hold her head under the water in the toilet and then would flush the toilet. Autumn said Lee would hold her head under the water in the toilet and then would flush the toilet. Autumn said Lillian told her that Lee did that to her too. Autumn said she believed Lee did that to Lillian because she would hear Lillian screaming in the bathroom. I asked Autumn if there was anything else Lee did to her. Autumn said Lee stuck his private part in her private part. I asked Autumn to point to her private part that she was talking about. Autumn pointed to her butt. I asked Autumn if she had a name for that part of her body. Autumn said she thought it was called a gluteus maximus. I asked Autumn if she had another name for it and she said her back private part. I asked Autumn if she had name for Lee's private part and Autumn said she called it a winkie. I asked Autumn if Lee put his winkie against her back private part or inside and she said he put it inside and it hurt her. I asked Autumn if her clothes were on or off when this happened. Autumn said Lee would tell her to take her clothes off and she did. Autumn said she took all her clothes off even her panties. I asked Autumn if anything happened to Lee's clothes. Autumn said Lee would

take all his clothes off. Autumn said Lee wore boxer underwear most of the time. I asked Autumn if Lee did anything else with his winkie. Autumn said Lee put his winkie inside her mouth. I asked Autumn if Lee's winkie felt hard. Autumn said it felt hard. I asked Autumn if Lee's winkie felt hard, soft or some other way. Autumn said it felt hard. I asked Autumn if she felt anything come out of Lee's winkie when it was inside her mouth and she said no. I asked Autumn where this happened. Autumn said it happened when they were all living in Opelika in a trailer. Autumn said the trailer was past Golden Corral. I asked Autumn who all would be at home when this happened. Autumn said it always happened when her mom was at work and she, Lilllian and Elizabeth would be at home with Lee. Autumn said Lee kept them while her mom worked. I asked Autumn if anything else happened. Autumn said one time Lee had his winkie inside her back private part and it slipped and went inside her pie. I asked Autumn what her pie was. Autumn said it was her front private part and she pointed to her vaginal area. Autumn said Lee put her in the bath tub. Autumn said Lee knew he had hurt her because there was blood coming out of her pie. Autumn said when Lee saw the blood he put her in the bath tub. I asked Autumn if she told anyone about that. Autumn said she told her mom that she had fallen off the balance beam at school. Autumn said that was what Lee told her to tell her mom. I asked Autumn if she went to the doctor because of this. Autumn said she didn't think she did but she couldn't remember for sure. Autumn said she didn't think Lee meant to hurt her pie but his winkie slipped when he had it inside her back private part. I asked Autumn what grade she was in when all this happened. Autumn said she was in kindergarden. I asked Autumn if she remembered the name of her school and she said no. I asked Autumn if there was anything else she could remember. Autumn said one time Lee slammed her head against the wall in the trailer. Autumn said she didn't know why Lee did that but it left a hole in the wall. Autumn said that happened in her bedroom. Autumn said she shared a bedroom with Lillian and Elizabeth. I asked Autumn if Lee put his winkie inside her back private part one time, two times, or a bunch of times and she said a bunch of times. I asked Autumn if Lee put his winkie inside her mouth one time, two times, or a bunch of times and she said a bunch of times. I asked Autumn if Lee put his winkie inside her pie one time, two times, or a bunch of times and she said that only happened one time. Autumn said Lee's full name was William Lee Kirby. Autumn said her mother told her that today. I asked Autumn if there was anything else she could remember. Autumn said Lee would kick and punch her and Lillian and leave marks and bruises on their legs and belly. I asked Autumn if that happened one time, two times, or a bunch of times and she said a bunch of times. I asked Autumn if there was anything else she could remember and she said no. Autumn said she wanted me to know that everything she had told me was the truth. I thanked Autumn for talking to me and ended the interview.

Interview Began:  1:10 p.m.
Interview Ended:  1:55 p.m.

Brenda Moss
Forensic Interviewer
Child Advocacy Center of East Al., Inc.

OCT 1 1 2005

0069

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

STATE OF ALABAMA,          *
                        *
v.                       *   CASE NO. CC 2001-1001
                        *
WILLIAM LEE KIRBY      ,  *
                        *
     Defendant.        *

## DISCOVERY ORDER

The State and Defense are hereby ordered to comply with the Discovery provisions as set forth in Rule 16, Alabama Rules of Criminal Procedure, without necessity for the filing of specific discovery motions as follows:

1. Upon <u>written</u> request of either the State or Defense, directed to the other, the parties shall make available to each other all Discovery as provided in Rule 16.

2. Said written requests shall be served on the opposing party, and a copy filed with the Circuit Clerk, a reasonable time prior to the scheduled trial of this case.

3. Upon receipt of such written request, the party upon whom such request is made shall comply with same a reasonable time prior to the scheduled trial of this case.

4. Any disagreements between the parties concerning the discovery matters are to be submitted to the Court for resolution upon written motion of either party a reasonable time prior to trial.

Done and Ordered this 10th day of October, 01.


ROBERT M. HARPER, CIRCUIT JUDGE

JACOB A. WALKER, III, CIRCUIT JUDGE

0070

```
ACP0372               ALABAMA JUDICIAL INFORMATION SYSTEM        CASE: CC 2001 001002.00
OF    LEW                    CASE ACTION SUMMARY
PA.    1                     CIRCUIT   CRIMINAL                        RUN DATE: 10/10/2001
==================================================================================
IN THE CIRCUIT COURT OF      LEE
                                                                        JUDGE: RMH
STATE   OF  ALABAMA                        VS      KIRBY WILLIAM LEE
                                                   98 JEANETTE
CASE: CC 2001 001002.00
                                                   OPELIKA, AL  36801 0000

DOB: 06/24/1976          SEX: M  RACE: W  HT: 5 05  WT: 201    HR: BRO EYES: BRO
SSN: 257063906  ALIAS NAMES:
CHARGE01: SODOMY 1ST DEGREE      CODE01: SOD1   LIT: SODOMY 1ST DEG TYP: F #: 001
OFFENSE DATE:                            AGENCY/OFFICER: 0430000 HEALEY/

DATE WAR/CAP ISS:
DATE    INDICTED: 10/05/2001         DATE  ARRESTED: 08/01/2001
DATE    RELEASED:                    DATE    FILED: 10/10/2001
BOND      AMOUNT:      $10,000.00 S   DATE  HEARING:
                                      SURETIES:
DATE 1: 10/18/2001  DESC: ARRG
DATE 2: 11/13/2001  DESC: JTRL        TIME: 0900 A
                                      TIME: 0830 A
TRACKING NOS: GJ 2001 000650 00  /

    DEF/ATY: HAUSER JERRY WAYNE          TYPE: X                    /
             POST OFFICE BOX 156                            TYPE:
             165 EAST MAGNOLIA AVENUE
             AUBURN         AL 36831
                                                          00000
PROSECUTOR: ABBETT NICK

==================================================================================
T.  SE: GJ200100065000 CHK/TICKET NO:                       GRAND JURY: 61
COURT REPORTER:                 SID NO:
DEF STATUS: BOND                DEMAND:       000000000            OPER: LEW
NOTE: 10-10-01   DISCOVERY ORDER
DATE |     ACTIONS, JUDGEMENTS, AND NOTES
```

| DATE | ACTIONS, JUDGEMENTS, AND NOTES |
|---|---|
| 10-11-01 10/18/01 | NOTICE OF ARRAIGNMENT TO DEFENDANT AND SURETIES. The Defendant in open court accompanied by attorney of record, and being duly arraigned does plead not guilty. The Defendant is granted five (5) days to file motions for special pleas. This case is set for docket call on _NOV 9_____, 20 01, at 9:00 A.M. The case is set for trial on _NOV 13_____, 20 01, at 8:30 A.M. _RMH_ |
|  | FILED IN OFFICE OCT 23 2001 |
| 10-24-01 | State's Motion for Hearing on Admissibility of Child Victim's Out of Court Statement |
| 10-26-01 | STATE'S MOTION FOR DISCOVERY |
| 25-01 | Motion to Consolidate or Notice of Other Crimes, Wrongs and Wrongs |
| 10/30/01 | Cases numbered CC01-1001, 1002, 1003, +1004 are Consolidated by agreement. _RMH_ |
|  | FILED IN OFFICE NOV 01 2001 |

State of Alabama
Unified Judicial System

Form C-7 Rev 1/71

## ACTION SUMMARY
### CONTINUATION

Case Number

cc01 - 1002.
10    YR    Number

Re:    State vs. William Lee Kirby

Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|------|-------------------------------|
| 11-2-01 | Request of Defendant for Production by State and Motin for Discovery |
| 12-04-01 | This case was tried before a jury and the following verdict returned: "We, the jury, find the Defendant, William Lee Kirby, guilty of Sodomy I of Autumn Rose McLees as charged in the indictment. "Foreman" It is the judgment of the Court Defendant is guilty.  Sentencing is set for February 28, 2002, at 8:00 A.M. |
| | FILED IN OFFICE  DEC 11 2001 |
| 12-17-01 | Order setting Habitual Offender Hearing on February 28, 2001, at 8:00 a.m. |
| 8/02 | Case is reset for March 14, 2002, @ 8:00 A.M. |
| | FILED IN OFFICE  MAR 05 2002 |
| 3/13/02 | Case Continued to March 28 2002 @ 8:00 AM. State and Defense notified. (CGT) |
| | FILED IN OFFICE  MAR 18 2002 |
| | VOL 033 PAGE 330 |

State of Alabama
Unified Judicial System

Form C-7 Rev. 2/79

**CASE ACTION SUMMARY**
CONTINUATION

Case Number

*CC 01 1602*
ID     YR        Number

Style: *State v. Kirby, William* Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|------|-------------------------------|
| *4/11/02* | Sentence is imposed on the Defendant as follows: |
| | *16* years in penitentiary; |
| | $ _____ fine; court costs; |
| | $ *0* to reimburse state for appointed lawyer; |
| | $ *50.00* Victim's Compensation Assessment; |
| | $ *pending* restitution to the Circuit Clerk; |
| | Defendant given credit for _____ days in pretrial confinement |
| | All sums are to be paid _____ |
| | |
| | Sentence imposed in this case to run concurrent with sentence imposed in case(s) numbered *CC 01 - 1001 & 1603* |
| | This Defendant is (not) eligible for Class I Status under Section 14-9-41 Code of Alabama 1975. This offense did occur on or after May 19, 1980.    *PMK* |
| | FILED IN OFFICE   APR 1 7 2002 |
| *'18/02* | Notice of Appeal and Request for a Court Appointed Attorney |
| *. 23/02* | Appeal Appointed appointing Hon Larry Cooper |
| *4-24-02* | *Notice of Appeal to Court of Crml Appeal* |
| *4-24-02* | *Prison Transcript Issued* |
| 6/12/02 | Motion for Extension of Time to Complete and file Transcript and order Granting and Extension of 28 days from and after July 8, 2002 |
| 6/12/02 | Motion to Set An Appeal Bond for Defendant |
| *6/17/02* | *Order setting Appeal Bond in the Amount of 20,000* |
| 6-26-02 | APPEALED TO THE COURT CRIMINAL APPEALS |
| | *Deft. Out On Bond* |
| | VOL *058* PAGE *331* |

0073

Grand Jury No. _____61_____         CC01-1002

TRUE BILL:---

*R. A. Craswell*

Foreperson Grand Jury

Filed in open Court on the __5th__ day of _____Oct_____, 2001, in the presence of the Grand Jury.

*Corinne J. Hurst*

Clerk

Presented to the presiding Judge in open Court by the Foreperson of the Grand Jury, in the presence of _____16_____ other Grand Jurors, and filed by order of Court this __5th__ day of _____Oct_____, 2001.

*Corinne J. Hurst*

Clerk

Bail fixed at $ __10,000__         this __9th__ day of _____Oct_____, 2001.

*Robert M Harper*

Judge Presiding

Sec. 15-8-70, Code 1975.

---

## THE STATE OF ALABAMA
## LEE COUNTY
### CIRCUIT COURT
Fall Term, 2001

THE STATE
VS.
William Lee Kirby, alias
Lee Kirby

Date of Arrest: 07/30/01                              SID#01353811

## INDICTMENT
### Sodomy First Degree
### §13A-6-63

No Prosecutor

### WITNESSES:

Det. Shane Healey, OPD
Det. Cpl. Kasey Brown, OPD
Det. John Pruitt, OPD
Off. Scott Tart, OPD
Autumn Rose McLees, 221 North Budding Ave., Virginia Beach, VA
Lillian McLees, 221 North Budding Ave., Virginia Beach, VA
Dawn Beheshtzaden, 221 North Budding Ave., Virginian Beach, VA
Yarbi Cound, 2015 Gateway Dr., Opelika, AL
Brenda Moss, 1810 Corporate Dr., Opelika, AL
Dr. Linda Anz, 121 North 21st St. #23, Opelika, AL
Dorie Milford, Chesapeake Child Protection, Chesapeake, VA

Dr. Suzanne P. Starling, 935 Redgate Ave., Norfolk, VA
Sandra Fernandez, 935 Redgate Ave., Norfolk, VA
Elizabeth Kocan, 1571 Mt. Pleasant Road, Chesapeake, VA

VOL 087 PAGE 956    HARPER

0079

# IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

STATE OF ALABAMA     *

PLAINTIFF     *    CRIMINAL DIVISION

    *    CASE NUMBER CC 01-1001,

v.     *      1002, 1003, 1004

    *

WILLIAM LEE KIRBY     *

DEFENDANT     *

## MOTION FOR EXTENSION OF TIME TO COMPLETE AND FILE TRANSCRIPT

FILED

JUN 1 2 2002

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

Comes now the Court Reporter who reported the evidence at the proceedings in the above-styled cause and moves the Court for an extension of time in which to complete and file the transcript of the evidence.

Dated this the 10th day of June, 200 2.

Willie T. Bennett, Court Reporter

## ORDER

For good cause shown the Court Reporter is granted an extension of twenty-eight (28) days from and after July 8th, 200 2, in which to complete and file the transcript of the evidence in the above-styled cause.

DONE, this the 10th day of June, 200 2

Robert M. Harper
Circuit Judge

0075

# IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA, CRIMINAL DIVISION

## A P P E A L   A P P O I N T M E N T

STATE OF ALABAMA

-v-

CASE NO: CC-01-1002

WILLIAM LEE KIRBY

Notice having been given for appeal in the above styled case, the Honorable
LARRY COOPER _____ is hereby appointed to represent the Defendant
in said appeal.

It is further ordered that the Court Reporter prepare a transcript of the evidence
and file the same with the Clerk of the Court, and that the Clerk prepare a transcript of
the record and file it with the Court of Appeals.

DONE this the 23RD day of _____ APRIL _____, 20 02 .


_____
CIRCUIT JUDGE


Original:     Court File
cc:          Attorney
             Court Administrator
             Court Reporter

0076

We, the jury, find the Defendant, William Lee Kirby, guilty of Sodomy I of Autumn Rose McLees as charged in the indictment.

_Jerry Wilks_
_____
Foreman


We, the jury, find the Defendant not guilty of the Sodomy of Autumn Rose McLees.


_____
Foreman

0072

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

STATE OF ALABAMA,              *
                              *
v.                            *   CASE NO. CC  2001-1002
                              *
WILLIAM LEE KIRBY          ,   *
                              *
        Defendant.            *

### DISCOVERY ORDER

The State and Defense are hereby ordered to comply with the Discovery provisions as set forth in Rule 16, Alabama Rules of Criminal Procedure, without necessity for the filing of specific discovery motions as follows:

1. Upon <u>written</u> request of either the State or Defense, directed to the other, the parties shall make available to each other all Discovery as provided in Rule 16.

2. Said written requests shall be served on the opposing party, and a copy filed with the Circuit Clerk, a reasonable time prior to the scheduled trial of this case.

3. Upon receipt of such written request, the party upon whom such request is made shall comply with same a reasonable time prior to the scheduled trial of this case.

4. Any disagreements between the parties concerning the discovery matters are to be submitted to the Court for resolution upon written motion of either party a reasonable time prior to trial.

Done and Ordered this __10th__ day of __October__ , ·01 .


_____
ROBERT M. HARPER, CIRCUIT JUDGE

_____
JACOB A. WALKER, III, CIRCUIT JUDGE

007%

```
ACP7372              ALABAMA JUDICIAL INFORMATION SYSTEM      CASE: CC 2001 001003.00
OF    LEW                    CASE ACTION SUMMARY
PA     1                     CIRCUIT   CRIMINAL                    RUN DATE: 10/10/2001
IN THE CIRCUIT COURT OF      LEE
                                                                          JUDGE: RMH
STATE  OF  ALABAMA                 VS      KIRBY WILLIAM LEE
                                           98 JEANETTE
CASE: CC 2001 001003.00
                                           OPELIKA, AL  36801 0000

DOB: 06/24/1976       SEX: M  RACE: W  HT: 5 05  WT: 201    HR: BRO  EYES: BRO
SSN: 257063906  ALIAS NAMES:
CHARGE01: RAPE 1ST DEGREE        CODE01: RAP1  LIT: RAPE 1ST DEGRE TYP: F #: 001
OFFENSE DATE:                            AGENCY/OFFICER: 0430000 HEALEY/

DATE WAR/CAP ISS:
DATE    INDICTED: 10/05/2001             DATE ARRESTED: 08/01/2001
DATE    RELEASED:                        DATE   FILED: 10/10/2001
BOND     AMOUNT:    $10,000.00 S         DATE  HEARING:
                                              SURETIES:
DATE 1: 10/18/2001  DESC: ARRG
DATE 2: 11/13/2001  DESC: JTRL           TIME: 0900 A
                                         TIME: 0830 A
TRACKING NOS: GJ 2001 000649 00  /                    /

   DEF/ATY: HAUSER JERRY WAYNE         TYPE: A
            POST OFFICE BOX 156                                    TYPE:
            155 EAST MAGNOLIA AVENUE
            AUBURN        AL 36831
                                                      00000
PROSECUTOR: ABBETT NICK

=========================================================================
DT    SE: GJ200100064900 CHK/TICKET NO:                  GRAND JURY: 62
COURT REPORTER:                  SID NO:
DEF STATUS: BOND                 DEMAND:     000000000
                                                        OPER: LEW
NOTE: 10-10-01  DISCOVERY ORDER
DATE         ACTIONS,  JUDGEMENTS,  AND  NOTES
=========================================================================
```

| | |
|---|---|
| 10-11-01 | NOTICE OF ARRAIGNMENT TO DEFENDANT AND SURETIES |
| 8-6-01 | DEFENDANT'S MOTION FOR DISCOVERY |
| 10/18/01 | The Defendant in open court accompanied by attorney of record, and being duly arraigned does plead not guilty. The Defendant is granted five (5) days to file motions for special pleas. This case is set for docket call on _Nov 9_ , 2001, at 9:00 A.M. The case is set for trial on _Nov 13_ , 2001, at 8:30 A.M. _RMH_ |
| | FILED IN OFFICE OCT 23 2001 |
| 10-24-01 | State's Motion for hearing on Admissibility of Child Victim's Out of Court Statement. |
| | VOL 058 PAGE 326 |
| 10-26-01 | STATE'S MOTION FOR DISCOVERY |
| 10-25-01 | Motion to Consolidate or Notice of Other Crimes, Wrongs and Wrongs |
| 10/30/01 | Cases numbered CC01-1001, 1002, 1003 & 1004 are |

State of Alabama
Unified Judicial System
Form C-7 Rev 2/79

## ACTION SUMMARY
### CONTINUATION

Case Number

cc01- 1003

0079

Re: State vs. William Lee Kirby

Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|------|-------------------------------|
| 11-2-01 | Request of Defendant for Production by State and Motin for Discovery |
| 12-04-01 | This case was tried before a jury and the following verdict returned: "We, the jury, find the Defendant, William Lee Kirby, guilty of Rape I of Autumn Rose McLees as charged in the indictment. Foreman" |
| | It is the judgment of the Court Defendant is guilty. Sentencing is set for February 28, 2002, at 8:00 A.M. FILED IN OFFICE DEC 11 2001 |
| 12-17-01 | Order setting Habitual Offender Hearing on February 28, 2001, at 8:00 a.m. |
| 2/28/02 | Case is reset for March 14, 2002, @ 8:00 A.M. FILED IN OFFICE MAR 05 2002 |
| 3/13/02 | Case continued to March 28 2002 @ 8:00 A.M. State + Defense notified (PKT) FILED IN OFFICE MAR 1 8 2002 |
| 3/28/02 | Case reset for April 11, 2002 @ 8:00 A.M. FILED IN OFFICE APR 1 9 2002 |

VOL. 653 PAGE 327

| State of Alabama Unified Judicial System | **CASE ACTION SUMMARY** CONTINUATION | Case Number |
|---|---|---|
| Form C-7 Rev. 2/79 | | *CC 01 1003* |
| | | ID    YR    Number |

Style:   *State V. Kirby, William*   Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 4/11/02 | Sentence is imposed on the Defendant as follows: |
| | _16_ years in penitentiary; |
| | $ ~~fine; court costs;~~ |
| | $ _____ to reimburse state for appointed lawyer; |
| | $ _50.00_ Victim's Compensation Assessment; |
| | $ _pending_ restitution to the Circuit Clerk; |
| | Defendant given credit for _0_ days in pretrial confinement |
| | ~~All sums are to be paid_____~~ |
| | |
| | Sentence imposed in this case to run concurrent with sentence imposed in case(s) numbered _CC 01 – 1001 # 1002._ |
| | This Defendant ~~is/is~~ not eligible for Class I Status under Section 14-9-41 Code of Alabama 1975. ~~This offense did occur on or after May 19, 1980.~~   *PMH* |
| | FILED IN OFFICE   APR 17 2002 |
| | |
| | |
| ´18/02 | Notice of Appeal and Request for a Court Appointed Attorney |
| ´/23/2002 | Appeal Appointment appointing Hon larry Cooper |
| 4.24.02 | *Notice of Appeal to Court of Criml Appeal* |
| 4.24.02 | *Prison Transcript Issued* |
| 6/12/02 | Motion for Extension of time to Complete and file Transcript and Order Granting an extension of 28 days from and after July 8, 2002 |
| 6/12/02 | Motion to Set An Appeal Bond for Defendant |
| 6.17.02 | *Order setting Appeal Bond in the amount of $20,000.00* |
| 6-26-02 | APPEALED TO THE COURT OF CRIMINAL APPEALS |
| | *Deft. Out on Bond* |
| | |
| | CIVIL 053 PAGE 328 |
| | |
| | |

JORI

Grand Jury No. _____ 62

CC01-1003

TRUE BILL:---

*R. A. Craswell*
Foreperson Grand Jury

Filed in open Court on the _5th_ day of _Oct_____, 2001, in the presence of the Grand Jury.

*Corinne D. Hurst*
Clerk

Presented to the presiding Judge in open Court by the Foreperson of the Grand Jury, in the presence of _____ 16 _____ other Grand Jurors, and filed by order of Court this _5th_ day of _Oct_____, 2001.

*Corinne D. Hurst*
Clerk

Bail fixed at $ _10,000_____ this _9th_ day of _Oct_____, 2001.

*Robert M Harper*
Judge Presiding

Sec. 15-8-70, Code 1975.

---

# THE STATE OF ALABAMA
## LEE COUNTY
### CIRCUIT COURT
Fall Term, 2001

THE STATE
VS.
William Lee Kirby, alias
Lee Kirby

Date of Arrest: 07/30/01

SID#01353811

## INDICTMENT
Rape First Degree
§13A-6-61

No Prosecutor

### WITNESSES:

Det. Shane Healey, OPD
Det. Cpl. Kasey Brown, OPD
Det. John Pruitt, OPD
Off. Scott Tart, OPD
Autumn Rose McLees, 221 North Budding Ave., Virginia Beach, VA
Lillian McLees, 221 North Budding Ave., Virginia Beach, VA
Dawn Beheshtzaden, 221 North Budding Ave., Virginian Beach, VA
Yarbi Cound, 2015 Gateway Dr., Opelika, AL
Brenda Moss, 1810 Corporate Dr., Opelika, AL
Dr. Linda Anz, 121 North 21st St. #23, Opelika, AL
Dorie Milford, Chesapeake Child Protection, Chesapeake, VA

Dr. Suzanne P. Starling, 935 Redgate Ave., Norfolk, VA
Sandra Fernandez, 935 Redgate Ave., Norfolk, VA
Elizabeth Kocan, 1571 Mt. Pleasant Road, Chesapeake, VA

VOL 687 PAGE 958

HARPER

# IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

STATE OF ALABAMA      *

PLAINTIFF      *    CRIMINAL DIVISION
            *    CASE NUMBER _CC 01-1001,_

v.      *          _1002, 1003, 1004_

_WILLIAM LEE KIRBY_    *

DEFENDANT      *

## MOTION FOR EXTENSION OF TIME TO COMPLETE AND FILE TRANSCRIPT

**FILED JUN 1 2 2002**

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

     Comes now the Court Reporter who reported the evidence and proceedings in the above-styled cause and moves the Court for an extension of time in which to complete and file the transcript of the evidence.

     Dated this the _10th_ day of _June_, 200_2_.

_Willie T. Bennett_

Willie T. Bennett, Court Reporter

## ORDER

     For good cause shown the Court Reporter is granted an extension of twenty-eight (28) days from and after _July 8th_, 200_2_, in which to complete and file the transcript of the evidence in the above-styled cause.

     DONE, this the _10th_ day of _June_, 200_2_

_Robert M. Harper_

Robert M. Harper
Circuit Judge

# IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA, CRIMINAL DIVISION

## A P P E A L   A P P O I N T M E N T

STATE OF ALABAMA

-v-

WILLIAM LEE KIRBY

CASE NO: CC-01-003

 

Notice having been given for appeal in the above styled case, the Honorable LARRY COOPER is hereby appointed to represent the Defendant in said appeal.

It is further ordered that the Court Reporter prepare a transcript of the evidence and file the same with the Clerk of the Court, and that the Clerk prepare a transcript of the record and file it with the Court of Appeals.

DONE this the 23RD day of APRIL , 20 02 .

_____
CIRCUIT JUDGE

Original:     Court File
cc:           Attorney
              Court Administrator
              Court Reporter

0084

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

STATE OF ALABAMA,                    *
                                     *
v.                                   *    CASE NO. CC 2001- 1003
                                     *
WILLIAM LEE KIRBY                    *
                        ,            *
        Defendant.                   *
                                     *

<u>DISCOVERY ORDER</u>

The State and Defense are hereby ordered to comply with the Discovery provisions as set forth in Rule 16, Alabama Rules of Criminal Procedure, without necessity for the filing of specific discovery motions as follows:

1.  Upon <u>written</u> request of either the State or Defense, directed to the other, the parties shall make available to each other all Discovery as provided in Rule 16.

2.  Said written requests shall be served on the opposing party, and a copy filed with the Circuit Clerk, a reasonable time prior to the scheduled trial of this case.

3.  Upon receipt of such written request, the party upon whom such request is made shall comply with same a reasonable time prior to the scheduled trial of this case.

4.  Any disagreements between the parties concerning the discovery matters are to be submitted to the Court for resolution upon written motion of either party a reasonable time prior to trial.

Done and Ordered this  10th  day of  October  ,  01  .


ROBERT M. HARPER, CIRCUIT JUDGE                JACOB A. WALKER, III, CIRCUIT JUDGE

IN THE DISTRICT COURT OF LEE COUNTY, ALABAMA

STATE OF ALABAMA,       )
   Plaintiff,          )
                )
vs.                     )     CASE NUMBER(S): Not yet assigned.
                )
WILLIAM LEE KIRBY,      )     CHARGES: Sodomy I (2cnts.) & Rape I.
   Defendant.          )

## DEFENDANT'S MOTION FOR DISCOVERY

    COMES NOW WILLIAM LEE KIRBY          , Defendant, by and through
his/her attorney of record, Jerry W. Hauser, and moves, pursuant
to Rule 16.1, Alabama Rules of Criminal Procedure, that the State
provide and/or make available to him/her for inspection and/or
copying all statements, documents, tangible objects, reports of
examinations and tests, and all other discoverable material as
so defined and described by Rule 16.1, Subdivisions (a)-(d), and
(f), Alabama Rules of Criminal Procedure, as such come into the
State's possession.

    Defendant further and specifically moves that the State notify
him/her of any and all additional information or evidence which
the State knows exists and which may reasonably be construed as
exculpatory.

    DONE and respectfully submitted on this  6th    day of
August          , 2001.

                                   Jerry W. Hauser
                                   Attorney for Defendant
                                   P.O. Box 156
                                   Auburn, Alabama 36831-0156
                                   (334) 821-7888

FILED
AUG 0 6 2001
IN OFFICE

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing attached "Defendant's Motion For Discovery" upon the Hon. Nick Abbett, District Attorney, Lee County, Alabama, by putting the same in his mailbox in the Circuit Clerk's Office, Lee County Justice Center, Opelika, Alabama, on this _6 ith_ day of _August_ , 2001.

Jerry W. Hauser

| State of Alabama<br>Unified Judicial System<br><br>ARAP-14      11/91 | CERTIFICATE OF COMPLETION AND<br>TRANSMITTAL OF RECORD ON<br>APPEAL BY TRIAL CLERK | Appellate Case Number<br><br>CR-01-1540 |
| --- | --- | --- |

| TO. THE CLERK OF<br>THE COURT OF CRIMINAL APPEALS OF ALABAMA | DATE OF<br>NOTICE OF APPEAL: 4/18/02 |
| --- | --- |

APPELLANT

   WILLIAM LEE KIRBY

v.  STATE OF ALABAMA

I certify that I have this date completed and transmitted herewith to the appellate court the record on appeal by assembling in (a single volume of _____ pages) ( __2__ volumes of 200 pages each and one volume of _____ pages) the clerk's record and the reporter's transcript and that one copy each of the record on appeal has been served on the defendant and the Attorney General of the State of Alabama for the preparation of briefs.

I certify that a copy of this certificate has this date been served on counsel for each party to the appeal.

Dated this __5TH__ day of __AUGUST__ , __2002__ .

_____
                            Circuit Clerk

0086

STATE OF ALABAMA

LEE COUNTY

 The Court Reporter having certified that the reproduction of APPELLANT'S
Exhibit No. | is difficult or impractical, I hereby attach said State's
Exhibit No. | to this page of the transcript and certify the same as a part
of the record.

*Corinne Hurst*

Corinne Hurst, Circuit Clerk
Lee County