351

1   honest about where they were living.  You'll read the
2   report of Dr. Starling and you'll see that that report
3   was given to the step grandmother, not the mother.
4   And after some doing the mother never would admit that
5   she wasn't living with the children.  The children
6   went to Virginia to live with the step grandmother
7   along with several cousins and you heard those names
8   of all the other cousins that were living with the
9   step grandmother.

10           This was written on April 13 of this year by
11  Dr. Starling.  History provided by maternal step
12  grandmother, that's Ms. Hepner, you'll have this.  She
13  states that Lillian and two siblings have lived with
14  her since June of '99.  That's what the step
15  grandmother says.  She reports Lillian's mother lives
16  locally with a new husband.  Ms. Hepner states she has
17  concerns with her stepdaughter's judgment and feels
18  the girls need the stability and support she can
19  provide.  Now what do you think is going on when the
20  stepmother has had these children and giving a bad
21  report about the mother?  At the same time support
22  petitions are being filed and other things are going
23  on.  And then they get up here and they will not even
24  acknowledge to you that the children are living with
25  the step grandmother.  She wanted you to believe that

352

somehow she lived with the step grandmother up until she got married in April. Well, that's not what the step grandmother told the doctor and it is, you've got it right there.

And there's some other things in there, when you try to jive some of what was said against what is written and what you've heard you can't do it.

So let's take the case of Lillian. Lillian's medical report. Now you'll notice that Dr. Anz never examined Lillian. She only examined Autumn. Now you have to ask yourself why that is. I'll tell you why it is, because they knew that the examination in Virginia showed that there were normal exams, which is what it shows. That's the reason they didn't have Dr. Anz check Lillian. Lillian, who claimed that she had been sodomized and raped and you'll recall the testimony, I mean the statement that was read by Ms. Moss, is was more than every day, is was more than several times, it was a bunch of times, everything was a bunch of times. And the medical report found there was no physical evidence to support what the girl said.

Now we come to Autumn. The medical reports will show that Autumn, there was nothing abnormal, she had a normal reading or a normal examination as to the

353

anus, which is contrary to her statement that she was penetrated on a regular basis. Now we come to the other charge there that Autumn says she was penetrated vaginally or in her pie. Now, you'll have the records and I went over this carefully with, well I went over it with Dr. Anz and then went over it again with Dr. Bush about the time. Now to make a long story short and boil it down to this and some of you know what I'm fixing to say and I think all of us common sense will tell us this. The little girl bled, had a laceration and bled for we know for six days. And we know on March 8th of 1999 she was hurt on March 3rd, and we have two different dates when she was hurt, but it says Wednesday, and Wednesday was March 3rd. Wednesday, Thursday, Friday, Saturday, Sunday, Monday, which is the 8th, that's six days that she bled. And she was still bleeding on the sixth day on the 8th of March when that report was written. She had scarring and she had bruises. Now the question is a simple question. You will recall that Autumn said the doctor said it was a straddle injury. You probably remember that, but whatever she says. The doctor said it was a straddle injury and Dr. Starling makes a note of that although he had never seen the emergency room or the report from the clinic. He notes that it was

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

354

1    reported as a straddle injury.

2         Of course on that Sunday Dr. Anz was so over

3    zealous that she was willing to agree with another

4    doctor without knowing whether it was a male or a

5    female or having ever having seen the report.

6         The simple fact is and the question is this:

7    Having no physical evidence of sodomy when there

8    should be some if you believe the girls, and no

9    physical evidence of rape on one of them, her hymen is

10   still intact, the girl has a perfectly normal reading.

11   And the other one, no physical evidence on the anal,

12   should be if you believe what they said. Then we get

13   to the vaginal problem where there was an abnormal

14   reading. Now the question is, and this is the one

15   that Dr. Anz crawfished on when I asked her, based on

16   a reasonable medical certainty, question: Based on a

17   reasonable medical certainty is it more certain that

18   this kind of injury, a person bleeding six days or

19   more, would more likely come from a trauma of falling,

20   a straddle injury, falling on something which caused

21   that injury and caused the laceration and bruising and

22   scarring, is that most likely to have come from a fall

23   or is it more likely to come from the story that the

24   girls said? And what did she say? One time, it's the

25   only time she claimed that she was attacked vaginally.

355

Autumn said one time he was trying to do it in my rear and it slipped and hit my vagina and he didn't mean to. And the question is, is it possible that that produced a scar and bruising and a laceration that caused bleeding for six days? And we don't know how many more days because the last report was on the 8th.

I think, ladies and gentlemen, you can believe because Dr. Anz wouldn't give a straight answer to that question, that medical question, Dr. Bush told you that based on a reasonable medical certainty that that would have occurred from the fall or the straddle injury and could not and would not have occurred if you believe the second story.

So what's the importance of trying to get facts? You see Ms. Moss had the same problem. And we find out from the State what is your purpose of getting all these records from Mr. Healy. Well our purpose is to have a successful conviction and successful prosecution. Then we get Ms. Moss who talks to the girls, one for forty minutes and one for forty-five minutes, and it's not compared with anything else they've said or any physical facts. Didn't even ask them what time this occurred. Failure to get facts that can be verified so the State can take away the reasonable doubt which they are required

356

1    to remove, because you can't just send somebody or
2    convict somebody for these kind of things with this
3    kind of testimony because it is not beyond a
4    reasonable doubt.  You'd have to assume something,
5    you'd have to add to something, you'd have to believe
6    that notwithstanding the fact there's no physical
7    evidence that it happened anyway.  You'd have to
8    believe that the fact that these girls have, you know
9    they changed their story.  And you know Autumn can
10   change a story because she did change her story.
11       And we get to secrecy.  David mentioned that this
12   was a secret thing and secrecy.  There are two secrets
13   in these kind of cases and the one we're dealing with
14   here is the secret of why these girls are doing this.
15   That's the secret.  What's the secret behind why they
16   got it wrong, why Autumn got it wrong on what the
17   facts were when she was talked to and the testimony
18   transcribed up in Virginia?  Was that because she
19   forgot it or because there was a secrecy of what these
20   girls plotted together or what their mother influenced
21   them to say?  We don't have to guess that they plotted
22   together because I got it, it came right off this
23   witness stand.  Right off this witness stand.  It's
24   not often that you can see that happen before your
25   eyes on something so obvious they can be checked.

357

1    They knew there was a problem with the time and they

2    wouldn't admit, even Dawn wouldn't admit when he

3    worked and wouldn't admit when she worked and didn't

4    even know when the school but left every morning, had

5    to bring Matthew on to get that straight.  That during

6    the whole time she was living here and those kids were

7    going to school and catching that school bus which is

8    a timing question, she didn't know what time they got

9    up and what time they caught the school bus.  Well, if

10   she had remembered it you know, it would have been

11   obvious that they had a problem time-wise.  But it's

12   obvious they have a problem time-wise anyway.

13           Now ladies and gentlemen, I know that you

14   have paid close attention to this case and I know some

15   of you and I know you probably know more about the

16   facts than I do, so I know you remember the facts and

17   you remember what people have said.  And all I can

18   urge upon you is a conviction in cases like this

19   should not be based on this kind of thing.  Now while

20   it's possible to have sexual abuse without physical

21   findings, it is not possible, for example, it's not

22   possible to prove or disprove other than whether you

23   believe somebody or not, whether somebody touched

24   somebody without penetration.  We can't disprove that.

25   I can't prove and Lee can't prove that he was never at

358

1    home with these girls.  That would be untruthful.

2    Obviously he was at home with these girls but he

3    wasn't there during the time or at the time when they

4    said these things happened.  He wasn't home during

5    those times of the day.

6           He looked after these girls, he looked after

7    them at Christmas and you hear from, you know,

8    Matthew, he baby-sat with Matthew.  He's had people

9    come here and testify and stand behind him and you can

10   believe what they've said and I don't think you can

11   believe what the girls said.  And when you read

12   through some of this, for example, part of the history

13   on Autumn is that she had a jagged tear in her

14   genitals, which the physicians attributed to a

15   straddle injury.  Now that's in the medical report.

16   Now, you get doctors who write things down but they

17   never ask the question and don't say here, based on a

18   reasonable medical certainty, and I know you

19   understand what that means, based on a reasonable

20   medical certainty what's the conclusion?  What is the

21   medical conclusion?

22          So here there is no evidence, ladies and

23   gentlemen.  You've got testimony of the children

24   that's obviously inconsistent and not just, it's not

25   possible that a child doesn't know the difference in

359

1    day and night.  This explanation that well, there are

2    two times of night is nonsensical.  Not only that,

3    somehow we've gotten here that the mother was sleeping

4    in the other room when these things happened.  That's

5    not the testimony that I heard.  The testimony of Dawn

6    was this all happened when the mother was working.

7    When the mother was working.  And Lee was there

8    keeping them.  The mother didn't work.  Then we got

9    the story about the aunt coming over.  You'll recall

10   that because Carol testified.  Autumn said that they

11   were having a fight and the Aunt Carol had to come

12   over there and separate them at their house when they

13   were fighting.  That never happened.  The mind of a

14   child is subject to be influenced by adults, good and

15   bad.    Children, and all of us have been there,

16   sometimes believe that Santa Claus, they actually saw

17   Santa Claus and his chariot flying across the house.

18   Children can be influenced to believe that the fairy

19   tales are real.  Not only that, once they're worked on

20   by the people who have them they can actually believe

21   not only, I mean they can literally believe that what

22   they saw is real.  And the more they tell it the more

23   it becomes that way in their mind and that's happened

24   in this case except but it didn't stand up because

25   they couldn't keep all the elements straight and that

360

1    gives you the evidence you need to know that what

2    they're saying, number one the physical evidence does

3    support it, and what they say doesn't jive and is not

4    true.

5           Now ladies and gentlemen, I leave it with

6    you.   This matter is in your hands.   It's been my

7    experience over thirty-five or thirty-six years that

8    while lawyers talk a lot when juries get the case it's

9    their case and it's up to you to read this thing and

10    all I can urge you is that convicting somebody on what

11    we've heard is something that I don't believe you

12    ought to do and I hope you don't do and I hope when

13    David finishes his closing and you get the

14    instructions from the Judge that you'll return a not

15    guilty verdict in this case.   Thank you for your time.

16           THE COURT:  Mr. Glanzer?

17           MR. GLANZER:  So it comes down to Santa Claus.

18    If you took a five, six, seven year old kid and you

19    said do you believe in Santa Claus?  Oh, yeah.   Why?

20    Mommy says it's true, daddy says it's true.   Well,

21    have you ever seen Santa Claus?  Oh, yeah, every year.

22    I go to the mall and he's there.   I get to talk to

23    him.   I get to tell him what I did during the year.

24    I get to tell him what I want.   So Santa Clause is

25    real.

361

1    Is it real if somebody sticks their penis in

2  your private areas?  Can you tell a child is that real

3  to believe and how do you know it's real?  Do you see

4  it at the mall every week or did it happen to you?

5  Can you tell a child, don't you remember when that

6  happened to you?  I don't know what you're talking

7  about.  You know when the guy takes his private part

8  and -- oh, you've never seen one?  And puts it in your

9  private part and you know, you do want to tell the

10  story, don't you?  And the mind of a five to eight

11  year old says man, I'm really ripping to tell that

12  story.  I want to tell that story, I want to come back

13  from Virginia.  I want to tell people up here, first

14  of all about what he did to me and he put it in my

15  butt and he put it in my private part and I just, I'm

16  dying to tell somebody about that.  And I told the

17  counselor and then let the doctor look at me and now

18  I get to go to Opelika and I get to do all that again

19  because I'm five to eight years old and this is fun.

20  This is our thing, five to eight year old's do this.

21  And come down here and the first one we call to the

22  stand can't even make it in here because she's crying.

23  And this is a premedicated crime on the part of these

24  children against this man.  Who's believing in Santa

25  Claus here?  Who wants you to believe in Santa Claus?

362

1    That guy right there.

2              What's sufficient evidence?   What if you

3    left the courthouse, you're on the way to your car,

4    you're there, and all of a sudden from behind a tree

5    a guy jumps out, puts a gun in your face, says give me

6    your wallet.  Here's my wallet.  You come back in and

7    say I just got robbed out there.  A guy just took my

8    wallet.  Well, describe him.  Well, he was about six

9    foot.  Make you walk up and say is this the guy?  And

10   you go, that's him, that's him, that's who did that to

11   me.  And they go that's not enough.  That's not good

12   enough, that's just your word.  Your word is no good.

13   It doesn't count.  Is that the way the legal system

14   works?  No.

15             The statement of a rape victim, sodomy

16   victim is prima facie evidence in and of itself.  That

17   means it goes to you for determination.  Now what's

18   the medical evidence?  You look for something to

19   corroborate.  And what the medical report says, you're

20   not always going to find it in a sex case.  You're not

21   always going to find it.  It's going to happen but

22   there may not be proof of it.  But in Autumn's case

23   there is.  And we're not saying that proves that it

24   happened, we're saying it corroborates the story.

25   It's something additional.  It's something that that

363

1    robbery victim doesn't have. Doesn't have that

2    witness to walk up and say, yeah, I saw it too. I

3    can't identify him but he was robbed. That's

4    corroboration that there was a robbery. That's

5    corroboration. That's corroboration.

6            Shane Healy took the stand. Familiar with

7    the case file. Familiar with everything that's been

8    told, done and the rest of it. How many questions did

9    they ask Shane Healy? Zero. Zero questions. But

10    when Brenda Moss took the stand who is a forensic

11    interviewer, and just interviews children to get their

12    story, they wanted her to be the case agent. Did you

13    check this out? Did you check that out. Did you

14    verify that? That's not her job. Her job is to say

15    what is your story? Tell me your story, without being

16    influenced, biased in any way. The opportunity was to

17    ask those questions to him and they didn't, because

18    they didn't want the answers.

19            What is rape one and sodomy one? Rape one

20    in this case as I said in the beginning it's a

21    statutory case. In rape you're looking for

22    penetration so slight to the vagina. So slight, it

23    can just that much. That's rape. There's no force,

24    we're not even into that. Did it happen? Children

25    under twelve over sixteen.

364

Sodomy.  Two possibilities here.  Deviant sexual intercourse, contact between his sex organ in either the mouth or the butt.  How many scars are you going to have in your mouth from oral sodomy?  How many there where he claimed it?  Zero.  Zero.  How do you prove it then physically?  How are you going to prove that?  Saying it happened, that's not going to be good enough?  That's good enough.  It's good enough under the law.

Let's give you some examples of some other things.  A person walks into the doctor's office and said I was in a car wreck and hit my head.  The doctor says my gosh you did.  We better treat that, maybe we ought to X-ray it.  Car wreck.  Comes back a week later, well, actually my dad got mad at me and we were at baseball practice, I kind of missed a few balls, he took a bat and hit me up side the head.  Does it change the diagnosis?  Not in that case, huh-uh.  Still hit in the head.

What about I fell down and hit the counter top?  Or next time, well, my husband and I got in an argument and he punched me out.  Is there a difference?  Does the doctor come to the same conclusion that there's not injury?  But it might make a difference on how you analyze that injury knowing

365

1  the complete facts, and that's what they've said all

2  along.  Every doctor, history, first and that guides

3  me on my conclusion.  Without knowing the history I

4  know there's injury but I don't know what to suspect.

5  With a history it might point me another direction.

6  Straddle injury, penetration.  Internal, external.

7  Big difference if you got the right story.

8         He's guilty.

9                    COURT'S CHARGE

10         THE COURT:  All right, ladies and gentlemen,

11  you've heard all the evidence in the case, now I'll

12  tell you what the law is that you apply to what you've

13  heard.

14         When this case was sent to this Court by the

15  Grand Jury the Defendant entered a plea of not guilty

16  to those indictments and by virtue of his entering

17  those pleas it casts the burden of proof on the State

18  of Alabama to satisfy you of his guilt beyond a

19  reasonable doubt.  The Defendant comes into court

20  presumed to be innocent and that presumption stays

21  with him until such time as each one of you is

22  satisfied of his guilt beyond a reasonable doubt.

23         Now the State's burden of reasonable doubt

24  to satisfy you by a reasonable doubt can be defined in

25  several ways.  A reasonable doubt is a doubt that

366

1   grows out of the evidence or the lack of evidence in

2   the case.  It's a doubt which after you consider all

3   the evidence or lack of evidence that exists.  A

4   reasonable doubt is not a doubt that's based on

5   speculation or conjecture or guesswork.  In short, a

6   reasonable doubt is a doubt for which a reason can be

7   given.

8           Now in this case there are four charges as

9   I told you when we began the case.  There are two

10  charges of rape and two charges of sodomy.  The

11  Criminal Code of this state says this with reference

12  to the charge of rape in the first degree:  A male

13  commits the crime of rape in the first degree if he

14  being sixteen years old or older engages in sexual

15  intercourse with a female who is less than twelve

16  years old.  That's the legal definition of rape in the

17  first degree.

18          The two charges of sodomy in this case,

19  first degree, the Criminal Code defines that offense

20  as follows:  A person commits the crime of sodomy in

21  the first degree if he being sixteen years old or

22  older engages in deviant sexual intercourse with a

23  person who is less than twelve years old.

24          Now that term deviant sexual intercourse is

25  further defined in the Criminal Code as follows:  Any

367

1    act of sexual gratification between persons not

2    married to each other involving the sex organs of one

3    person and the mouth or anus of another.  That's the

4    definition of deviant sexual intercourse.

5         Now ladies and gentlemen, you decide this

6    case based on evidence.  Evidence consists of three

7    things:  The testimony of the witnesses that you've

8    heard during the course of this trial, the exhibits

9    that you'll have with you in the jury room, and the

10   presumption of innocence that I have already defined

11   for you.

12        You do not consider as evidence the fact

13   that there have been indictments in the case, that is

14   not evidence of guilt.  Nor should you consider the

15   arguments of the attorneys as evidence.  You have a

16   right to consider what they say but that's not

17   evidence in the case.  Nor any ruling that the Court

18   has made during the course of this trial.

19        Your verdicts must be unanimous, and that is

20   all twelve of you must agree on these verdicts in

21   order to return a legal verdict.  We do not have

22   majority verdicts in Alabama.  And when you come back

23   and these verdicts are announced in court I will ask

24   each one of you whether or not you agree with the

25   announced verdicts, and naturally, I would expect each

368

1    one of you to indicate to me that you do agree with

2    those verdicts.

3            Now you folks are the judges of the weight

4    to be give to this testimony and evidence.  And you

5    have a right to use your good common sense in deciding

6    what weight is to be given to this testimony and

7    evidence in this case.  You don't leave that at home

8    when you come up here to serve on the jury.  You have

9    a right to consider what the various witnesses have

10   said, the manner in which they've testified, the

11   substance of their testimony, any interest that they

12   may have in the outcome of the case.  All of those

13   things are certainly legitimate areas for you to

14   consider in deciding what weight you're going to give

15   to the testimony of each person.

16           Now if you're satisfied that any person has

17   come before you and willfully testified falsely as to

18   any material fact then you have a right to disregard

19   all of that testimony, although you do not have to.

20           I have prepared four verdict forms for you.

21   They are set out in the format as follows:  In the

22   event you convict this Defendant of one of these

23   offenses, for instance the first one is sodomy in the

24   first degree of Autumn.  The form of that verdict is

25   we, the jury, find the Defendant, William Lee Kirby,

369

1    guilty of sodomy one of Autumn Rose McLees as charged

2    in the indictment, and then a signature line for the

3    foreman. If you convict him of that charge if you are

4    reasonably satisfied beyond a reasonable doubt from

5    the evidence then the foreman would sign that verdict.

6         On the other hand, on that charge if you're

7    not satisfied beyond a reasonable doubt of his guilt

8    then you should acquit him and the form of the verdict

9    is we, the jury, find the Defendant not guilty of

10   sodomy of Autumn Rose McLees, and the foreman would

11   sign that verdict form.

12        There's a separate verdict form for the

13   charges of sodomy on both of the alleged victims, and

14   the charges of rape on both alleged victims. There

15   are places at the bottom for a finding of not guilty

16   on any one of those charges that you find to be the

17   case.

18        Now when you come back you will bring back

19   four signed verdict forms. So you need to take care

20   that you, when you sign them, whoever the foreman is,

21   that that person does that with care so that it

22   accurately reflects the result of your deliberations.

23        Now the first thing that should be done when

24   you go back to the jury room is to elect a foreman.

25   That person has two duties. First is to preside over

370

1    your deliberations and secondly is to sign the

2    appropriate verdict form, once you've reached a

3    decision.

4         Now once you have reached a decision in

5    these cases you knock on the door and let the bailiff

6    know, we'll bring you back here in the courtroom, they

7    will be handed to me, and I will read them in open

8    court.

9         If any questions come up during your

10   deliberations write the question out on a piece of

11   paper in as much detail as you can and if I can answer

12   it for you I will answer it for you.  Just give it to

13   the bailiff if you have a question.

14        If you need to take a recess during your

15   deliberations, knock on the door and let the bailiff

16   know and we'll let you take a recess from your

17   deliberations.

18        All right.  What says the State as to the

19   Court's charge?  Satisfied?

20        MR. GLANZER:  Satisfied.

21        THE COURT:  Defense?

22        MR. FUNDERBURK:  The Defendant is satisfied, Your

23   Honor.

24        THE COURT:  All right.  We have an alternate in

25   this case that we did not need.  And the alternate is

371

1    Harry Ennis.  Mr. Ennis, I'll let you stay here and

2    you folks may go out and begin your deliberations.  We

3    will gather this evidence and send it out to you just

4    as quickly as we can put it together.  So you may go

5    right out that door.

6              (WHEREUPON, the jury retired to the jury

7              room to begin their deliberations at 2:20

8              o'clock p.m., and at 3:45 the jury

9              announced that they had a question, and the

10             following occurred, to-wit:)

11   THE COURT:  The jury has sent out a note saying

12   they want the definition of the charges of sodomy and

13   of rape.  So I'll bring them back in here and read

14   them to them again.

15             (WHEREUPON, the jury returned to the

16             courtroom and the following proceedings

17             were had and done in its presence and

18             hearing, to-wit:)

19   THE COURT:  You sent a note out, ladies and

20   gentlemen, you want the charges defined for you again.

21        All right rape.  A very simple definition in

22   the Alabama Criminal Code, it says this:  A male

23   commits the crime of rape in the first degree if he

24   being sixteen years old or older engages in sexual

25   intercourse with a female who is less than twelve

372

1    years old.  That's the definition of rape in the first

2    degree.

3            Sodomy is as follows:  A person commits the

4    crime of sodomy in the first degree if he being

5    sixteen years old or older engages in deviant sexual

6    intercourse with a person who is less than twelve

7    years old.

8            Now that term deviant sexual intercourse is

9    further defined as follows:  It is any act of sexual

10   gratification between persons not married to each

11   other involving the sex organs of one person and the

12   mouth or anus of another.

13        All right.  Those are the simple definitions of

14   those offenses.  I'll send you back out to continue

15   your deliberations.

16            (WHEREUPON, the jury retired to the jury

17            room to continue their deliberations and at

18            4:30 o'clock p.m., the jury announced ready

19            with a verdict and the following occurred,

20            to-wit:)

21        THE COURT:  I understand the jury has reached a

22   verdict.  If there is anyone in the courtroom who

23   can't keep his or her emotions under control now is

24   the time to leave.

25            (WHEREUPON, the jury returned to the

373

1          courtroom and the following proceedings
2          were had and done in its presence and
3          hearing, to-wit:)
4     THE COURT: Have you reached verdicts, ladies and
5     gentlemen?
6          A JUROR: Yes, we do, Your Honor.
7     THE COURT: Hand it to the bailiff, please.
8          The verdicts read as follows:
9          "We, the jury, find the Defendant, William
10    Lee Kirby, guilty of sodomy one of Autumn Rose McLees
11    as charged in the indictment."
12         "We, the jury, find the Defendant, William
13    Lee Kirby, guilty of rape one of Autumn Rose McLees as
14    charged in the indictment."
15         "We, the jury, find the Defendant, William
16    Lee Kirby, guilty of sodomy one of Lillian J. McLees
17    as charged in the indictment."
18         "We, the jury, find the Defendant not guilty
19    of the rape of Lillian J. McLees."
20         Now, ladies and gentlemen, if this is the
21    verdict of each one of you would you indicate that by
22    raising your hands?
23         (All jurors raising hands.)
24    THE COURT: All right. Let the record show that
25    all jurors agree with the verdicts.

374

1          All right.  Mr. Kirby, step around in front

2      of the bench.

3          The jury having returned verdicts of guilty

4      of two charges of sodomy and one charge of rape, it's

5      the judgment of the Court that you are guilty of those

6      offenses.  I'm going to set a sentencing hearing --

7          MR. GLANZER:  Judge, the State would give notice

8      of three prior convictions and request an habitual

9      offender hearing.

10         THE COURT:  We'll set a hearing on February 28th

11     of next year.  That will be at eight o'clock.  In the

12     meantime you're in custody of the sheriff, pending

13     sentence hearing in those cases.

14         THE DEFENDANT:  All right, sir.

15         THE COURT:  Go right out that door.

16             (WHEREUPON, the trial proceedings were

17             concluded.)

375

STATE OF ALABAMA
IN THE CIRCUIT COURT FOR THE COUNTY OF LEE
THIRTY-SEVENTH JUDICIAL CIRCUIT
CRIMINAL

STATE OF ALABAMA,

       PLAINTIFF,

   VS.

WILLIAM LEE KIRBY,

       DEFENDANT

CASE NOS. CC-01-1001
CC-01-1002
CC-01-1003
CC-01-1004

## REPORTER'S OFFICIAL TRANSCRIPT OF THE SENTENCING HEARING BEFORE THE COURT

Before:

       HON. ROBERT M. HARPER, Circuit Judge, in Courtroom Number Four of the Lee County Justice Center located at Opelika, Alabama, on the 11th day of April, 2002, and being concluded on the same day.

### A P P E A R A N C E S

    HON. VANCE NICHOLAS ABBETT, District Attorney for the 37th Judicial Circuit of Alabama, and HON. DAVID GLANZER, Assistant District Attorney for the 37th Judicial Circuit of Alabama, appearing for the State of Alabama.

    HON. KENNETH FUNDERBURK, Attorney at Law, appearing for the Defendant.

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

376

<u>P R O C E E D I N G S</u>

1

2 THE COURT: All right. Appearing in open court

3 is the Defendant, William Lee Kirby and his attorney,

4 Kenneth Funderburk, in Case Number 01-001.

5 The jury having found you guilty of the

6 offense of sodomy in the first degree it's the

7 judgment of the Court that you are guilty of that

8 offense. Do you have anything to say at this time why

9 sentence of the Court should not be pronounced upon

10 you?

11 THE DEFENDANT: No, sir.

12 THE COURT: What does the State have?

13 MR. GLANZER: Judge, we have some letters from

14 the two little girl victims and their mother, and also

15 a claim for $300.00 in restitution. And as given

16 notice prior, he does have three priors and he also

17 has three class A convictions.

18 THE COURT: Have you got evidence of that?

19 MR. FUNDERBURK: Your Honor, I need to make a

20 comment on that when you're ready.

21 THE COURT: Okay. Go ahead.

22 MR. FUNDERBURK: We just ask Your Honor, I

23 realize he does have those three but it arises out of

24 one series of events. We'd ask the Court to consider

25 treating those as one occurrence in your sentencing.

377

1       THE COURT:  What's the State's position on that?

2       MR. GLANZER:  Judge, we would object.  When you

3   have three --

4       THE COURT:  Have you talked to Mr. Abbett about

5   this?

6       MR. GLANZER:  No, sir.

7       THE COURT:  You might want to go do that.  He

8   mentioned something to me yesterday about this that --

9   you haven't talked to him about this at all?

10      MR.  GLANZER:   No,  sir.   We've  had  the

11  understanding all along --

12      THE COURT:  Is he here today?

13      MR. GLANZER:  He is in Montgomery from what I

14  understand, or somewhere.  But I've never had any

15  indication they were all going to be treated as one.

16          (An off the record discussion.)

17      THE COURT:  All right.  We'll put this off until

18  Mr. Abbett gets back.  We'll do it tomorrow or

19  whenever we can get to it then in view of that.

20      MR. FUNDERBURK:  Can we just be back in the

21  morning or --

22      THE COURT:  Well, we can reset it next week or

23  two weeks, whatever you want to do.

24      MR.  FUNDERBURK:   Your  Honor,  I'm  at  your

25  convenience, so --

378

1          THE COURT:  We'll reset this for March 14th at

2      eight o'clock.  How about that?

3          MR. FUNDERBURK:  Thank you, Your Honor.

4              (WHEREUPON, the proceedings were ended.)

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

379

STATE OF ALABAMA
IN THE CIRCUIT COURT FOR THE COUNTY OF LEE
THIRTY-SEVENTH JUDICIAL CIRCUIT
CRIMINAL

STATE OF ALABAMA,

        PLAINTIFF,

    VS.                     CASE NOS. CC-01-1001
                                       CC-01-1002
WILLIAM LEE KIRBY,             CC-01-1003
                                       CC-01-1004
        DEFENDANT

## REPORTER'S OFFICIAL TRANSCRIPT OF THE
## SENTENCING HEARING BEFORE THE COURT

Before:

        HON. ROBERT M. HARPER, Circuit Judge, in Courtroom Number Four of the Lee County Justice Center located at Opelika, Alabama, on the 14th day of April, 2002, and being concluded on the same day.

### A P P E A R A N C E S

    HON. **VANCE NICHOLAS ABBETT**, District Attorney for the 37th Judicial Circuit of Alabama, and HON. **DAVID GLANZER**, Assistant District Attorney for the 37th Judicial Circuit of Alabama, appearing for the State of Alabama.

    HON. **KENNETH FUNDERBURK**, Attorney at Law, appearing for the Defendant.

FORM CSR - LASER    REPORTERS PAPER & MFG. CO.    800-626-6313

380

P R O C E E D I N G S

1

2    THE COURT:  All right.  Appearing in Court is

3    William  Lee  Kirby  and  his  attorney,  Kenneth

4    Funderburk.

5        The  jury  has  found  you  guilty  in  three

6    cases, Mr. Kirby of sodomy in the first degree, rape

7    in the first degree and sodomy in the first degree.

8    Do you have anything to say at this time why sentence

9    of the Court should not be pronounced upon you?

10    THE DEFENDANT:  No, sir.

11    THE  COURT:  All  right.  Does  the  State  have

12    habitual offender material to be presented?

13    MR. GLANZER:  Yes, sir.  We filed notice to the

14    Court  on  December  17th,  2001,  of  three  prior

15    convictions.  They  were  all  breaking  and  entering

16    motor vehicles.

17    THE COURT:  How many convictions?

18    MR. GLANZER:  Three.  Class C felonies, back on

19    May 4th of 1995.

20    THE  COURT:  Okay.  Well,  how  many  separate

21    convictions have you got there?

22    MR. GLANZER:  Three.

23    MR. FUNDERBURK:  Your Honor, we'd simply ask that

24    the Court consider those as one.  It was a series at

25    one time.

381

1          THE COURT:   What do you say about that, Mr.

2     Glanzer?

3          MR. GLANZER:   My understanding is that each one

4     has to be treated separately as far as at the time of

5     the offense I think the Court can consider them as

6     concurrent for sentencing purposes, but as far as

7     habitual offender they should be counted individually.

8          MR. FUNDERBURK:   We understand that would be the

9     case, but the Court does have the power and authority

10    on the sentencing phase to treat them as one offense.

11         THE COURT:   Okay.  Anything else to be presented

12    by either side today?

13         MR. GLANZER:   Judge, we are pending still from

14    the mother and the two children the travel costs of

15    coming to trial as well as some counseling costs that

16    are going on in Virginia, so we would ask that that be

17    left pending.

18         MR. FUNDERBURK:   And we're not going to dispute

19    that, Your Honor, whenever they come up with a figure.

20         THE COURT:   Okay.  Anything else by either side?

21         MR. FUNDERBURK:   No, sir, Your Honor.

22         THE COURT:   It's the sentence of the Court you be

23    confined in the penitentiary of the State of Alabama

24    for a term of sixteen years in each case to run

25    concurrent, pay court costs, pay a victim's

382

1    restitution  assessment  of  $50.00  in  each  case.

2    Restitution will just remain pending.  How long have

3    you been in jail on this, Mr. Kirby?

4        THE DEFENDANT:  Four and a half months.

5        THE COURT:  All right.  I'll give you credit for

6    four and a half months.

7            You have a right to appeal.  If you can't

8    afford an attorney one would be appointed for you and

9    you'd be given a free transcript.

10            Anything else today?

11        MR. GLANZER:  No, sir.

12        MR. FUNDERBURK:  No, sir, Your Honor.

13        THE COURT:  You're in custody of the sheriff.

14            (WHEREUPON,    the    sentence    hearing

15                proceedings were ended.)

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

383

# C E R T I F I C A T E

STATE OF ALABAMA          )

LEE COUNTY                )

    I, Willie T. Bennett, Official Court Reporter at Opelika, Alabama, do hereby certify that I reported in shorthand the proceedings and testimony in the foregoing styled cause at the time and place stated in the caption hereof; that I later reduced my shorthand notes to typewriting; or the same was done under my supervision; that the foregoing pages beginning with the word "Proceedings", where the same appears in the center of the page, following the style of the case, the caption and the appearances, contain a full, true and correct transcript of the proceedings and testimony as therein set out.

    I FURTHER CERTIFY that I have placed in the Court File all of the exhibits offered in said trial in the order offered, which fact is certified to the Clerk of the Court.

    I FURTHER CERTIFY that I have on this date notified counsel for the parties of the filing of this transcript in the Office of the Clerk of the 37th Judicial Circuit of Alabama, Law Division.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

384

THIS ___30<u>th</u>___ day of July, 2002.


_Willie T. Bennett_
OFFICIAL COURT REPORTER


F I L E D

JUL 30 2002

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313